

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
OFFICE OF THE CLERK**

Alfred A. Arraj
United States Courthouse
901 19th Street
Denver, Colorado 80294
www.cod.uscourts.gov

Jeffrey P. Colwell
*Clerk*

Phone: (303) 844-3433

Date: 7/8/2025

☐ Pro Se        ☐ Retained        ☐ CJA        ☐ FPD        USA or other
☒ Federal Agency
(Appeal Fee Exempt)

Case No: <u>25-cv-01163-CNS</u>        ☐ Amended Notice of Appeal
☐ Other pending appeals
Date Filed: <u>7/7/2025</u>        ☐ Transferred Successive
    §2254 or §2255
Appellant: <u>Dawn Ceja, et al</u>        ☐ Supplemental Record

Pro Se Appellant:
    ☐ IFP forms mailed/given        ☐ Motion IFP pending        ☐ Appeal fee paid
            ☐ IFP denied        ☐ Appeal fee not paid

Retained Counsel:
    ☐ Appeal fee paid        ☐ Appeal fee not paid        ☐ Motion IFP filed

The Preliminary Record on Appeal is hereby transmitted to the Tenth Circuit Court of Appeals. Please refer to the forms, procedures, and requirements for ordering transcripts, preparing docketing statements and briefs, and designations of the record that are found on the Tenth Circuit's website, www.ca10.uscourts.gov.

If not already completed, either an appeal fee payment for filing this case or filing of a motion to proceed *in forma pauperis* will be made to this District Court.

The transcript order form must be filed in the District Court as well as the Court of Appeals within 14 days after the notice of appeal was filed with the District Court.

If you have questions, please contact this office.

Sincerely,

JEFFREY P. COLWELL, CLERK

by:  s/ S. Phillips,
    Deputy Clerk

Rev. 8/17/2017

cc:    Clerk of the Court, Tenth Circuit Court of Appeals

Rev. 8/17/2017

2241Fed,APPEAL,JD1

# U.S. District Court – District of Colorado
## District of Colorado (Denver)
## CIVIL DOCKET FOR CASE #: <u>1:25–cv–01163–CNS</u>

D.B.U. et al v. Trump et al
Assigned to: Judge Charlotte N. Sweeney
Case in other court:  U.S. Court of Appeals, 10th Cir.,
                 25–01164
Cause: 28:2241in – Habeas Corpus: INS

Date Filed: 04/12/2025
Jury Demand: None
Nature of Suit: 530 Habeas Corpus
(General)
Jurisdiction: U.S. Government Defendant

**Petitioner**

**D.B.U.**
*and on behalf of themselves and others*
*similarly situated*

represented by

**Monique R. Sherman**
Rocky Mountain Immigrant Advocacy
Network
7301 Federal Boulevard
Suite 300
Denver, CO 80030
203–980–2670
Email: <u>msherman@rmian.org</u>
*LEAD ATTORNEY*

**Anna I. Kurtz**
ACLU of Colorado
303 East 17th Avenue
Suite 350
Denver, CO 80203
720–402–3137
Email: <u>akurtz@aclu–co.org</u>
*ATTORNEY TO BE NOTICED*

**Emma K. Mclean–Riggs**
ACLU of Colorado
303 East 17th Avenue
Suite 350
Denver, CO 80203
720–248–8848
Email: <u>emcleanriggs@aclu–co.org</u>
*ATTORNEY TO BE NOTICED*

**Laura Patricia Lunn**
Rocky Mountain Immigrant Advocacy
Network
7301 Federal Boulevard
Suite 300
Westminster, CO 80030
720–370–9100
Fax: 303–433–2823
Email: <u>llunn@rmian.org</u>
*ATTORNEY TO BE NOTICED*

1

**Lee Gelernt**
American Civil Liberties Union
125 Broad Street
18th Floor
New York, NY 10004–2400
212–549–2616
Email: lgelernt@aclu.org
*ATTORNEY TO BE NOTICED*

**Omar C. Jadwat**
American Civil Liberties Union
125 Broad Street
18th Floor
New York, NY 10004–2400
212–549–2620
Fax: 212–549–2654
Email: ojadwat@aclu.org
*ATTORNEY TO BE NOTICED*

**Tamara F. Goodlette**
Rocky Mountain Immigrant Advocacy
Network
7301 Federal Boulevard
Suite 300
Denver, CO 80030
203–980–2670
Email: tamigoodlette@yahoo.com
*ATTORNEY TO BE NOTICED*

**Timothy R. Macdonald**
ACLU of Colorado
303 East 17th Avenue
Suite 350
Denver, CO 80203
720–402–3151
Email: tmacdonald@aclu–co.org
*ATTORNEY TO BE NOTICED*

**Sara R. Neel**
ACLU of Colorado
303 East 17th Avenue
Suite 350
Denver, CO 80203
720–402–3107
Fax: 303–777–1773
Email: sneel@aclu–co.org
*ATTORNEY TO BE NOTICED*

**Petitioner**

| | | |
|---|---|---|
| **R.M.M.** *and on behalf of themselves and others* | represented by | **Monique R. Sherman** (See above for address) |

*similarly situated*

*LEAD ATTORNEY*

**Anna I. Kurtz**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Emma K. Mclean–Riggs**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Laura Patricia Lunn**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Lee Gelernt**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Omar C. Jadwat**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Tamara F. Goodlette**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Timothy R. Macdonald**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sara R. Neel**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**<u>Respondent</u>**

**Donald J. Trump**
*in his official capacity as President of the
United States*

represented by **Michael Kenneth Velchik**
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530
202–305–7920
Email: <u>michael.velchik@usdoj.gov</u>
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kevin Thomas Traskos**
U.S. Attorney's Office
1801 California Street
Suite 1600
Denver, CO 80202

303–454–0100
Fax: 303–454–0408
Email: Kevin.Traskos@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Respondent**

**Pamela Bondi**
*Attorney General of the United States, in
her official capacity*

represented by    **Michael Kenneth Velchik**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kevin Thomas Traskos**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Respondent**

**Kristi Noem**
*Secretary of the U.S. Department of
Homeland Security, in her official
capacity*

represented by    **Michael Kenneth Velchik**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kevin Thomas Traskos**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Respondent**

**US Department of Homeland Security**

represented by    **Michael Kenneth Velchik**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kevin Thomas Traskos**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Respondent**

**Todd Lyons**
*Acting Director of U.S. Immigration and
Customs Enforcement, in his official
capacity*

represented by    **Michael Kenneth Velchik**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kevin Thomas Traskos**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Respondent**

**US Immigration and Customs
Enforcement**

represented by    **Michael Kenneth Velchik**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

4

|  | | Kevin Thomas Traskos |
|---|---|---|
|  | | (See above for address) |
|  | | *ATTORNEY TO BE NOTICED* |
| **Respondent** | | |
| **Marco Rubio** | represented by | **Michael Kenneth Velchik** |
| *Secretary of State, in his official capacity* | | (See above for address) |
|  | | *LEAD ATTORNEY* |
|  | | *ATTORNEY TO BE NOTICED* |
|  | | |
|  | | **Kevin Thomas Traskos** |
|  | | (See above for address) |
|  | | *ATTORNEY TO BE NOTICED* |
| **Respondent** | | |
| **US State Department** | represented by | **Michael Kenneth Velchik** |
|  | | (See above for address) |
|  | | *LEAD ATTORNEY* |
|  | | *ATTORNEY TO BE NOTICED* |
|  | | |
|  | | **Kevin Thomas Traskos** |
|  | | (See above for address) |
|  | | *ATTORNEY TO BE NOTICED* |
| **Respondent** | | |
| **Robert Gaudian** | represented by | **Michael Kenneth Velchik** |
| *Director of the Denver Field Office for U.S. Immigration and Customs Enforcement, in his official capacity* | | (See above for address) |
|  | | *LEAD ATTORNEY* |
|  | | *ATTORNEY TO BE NOTICED* |
|  | | |
|  | | **Kevin Thomas Traskos** |
|  | | (See above for address) |
|  | | *ATTORNEY TO BE NOTICED* |
| **Respondent** | | |
| **Dawn Ceja** | represented by | **Michael Kenneth Velchik** |
| *Warden, Denver Contract Detention Facility, in her official capacity* | | (See above for address) |
|  | | *LEAD ATTORNEY* |
|  | | *ATTORNEY TO BE NOTICED* |
|  | | |
|  | | **Kevin Thomas Traskos** |
|  | | (See above for address) |
|  | | *ATTORNEY TO BE NOTICED* |

| Date Filed | # | Docket Text |
|---|---|---|
| 04/12/2025 | 1 | APPLICATION for Writ of Habeas Corpus Pursuant to 28 USC 2241 *and Class Complaint for Declaratory and Injunctive Relief* (Filing fee $ 5, Receipt Number ACODC–10274533)Attorney Sara R. Neel added to party D.B.U. (pty:pet), Attorney |

|  |  | Sara R. Neel added to party R.M.M. (pty:pet), filed by D.B.U., R.M.M.. (Attachments: # 1 Civil Cover Sheet, # 2 Summons, # 3 Summons, # 4 Summons, # 5 Summons, # 6 Summons, # 7 Summons, # 8 Summons, # 9 Summons, # 10 Summons, # 11 Summons)(Neel, Sara) (Entered: 04/12/2025) |
|---|---|---|
| 04/12/2025 | 2 | Emergency MOTION for Temporary Restraining Order by Petitioners D.B.U., R.M.M.. (Attachments: # 1 Exhibit A, Barber Declaration, # 2 Exhibit B, Hightower Declaration, # 3 Proposed Order (PDF Only))(Neel, Sara) (Entered: 04/12/2025) |
| 04/12/2025 | 3 | MOTION for Leave to *Proceed Under Pseudonym* by Petitioners D.B.U., R.M.M.. (Neel, Sara) (Entered: 04/12/2025) |
| 04/12/2025 | 4 | MOTION to Certify Class by Petitioners D.B.U., R.M.M.. (Attachments: # 1 Exhibit Galindo Declaration)(Neel, Sara) (Entered: 04/12/2025) |
| 04/13/2025 | 5 | Case assigned to Judge Charlotte N. Sweeney and drawn to Magistrate Judge Cyrus Y. Chung. Text Only Entry (jcolw, ) (Entered: 04/13/2025) |
| 04/13/2025 | 6 | NOTICE of Entry of Appearance by Timothy R. Macdonald on behalf of D.B.U. Attorney Timothy R. Macdonald added to party D.B.U. (pty:pet) (Macdonald, Timothy) (Entered: 04/13/2025) |
| 04/13/2025 | 7 | NOTICE of Entry of Appearance by Timothy R. Macdonald on behalf of R.M.M. Attorney Timothy R. Macdonald added to party R.M.M. (pty:pet) (Macdonald, Timothy) (Entered: 04/13/2025) |
| 04/13/2025 | 8 | NOTICE of Entry of Appearance by Emma K. Mclean–Riggs on behalf of D.B.U., R.M.M. Attorney Emma K. Mclean–Riggs added to party D.B.U. (pty:pet), Attorney Emma K. Mclean–Riggs added to party R.M.M. (pty:pet) (Mclean–Riggs, Emma) (Entered: 04/13/2025) |
| 04/13/2025 | 17 | ADVISORY NOTICE OF NONCOMPLIANCE WITH COURT RULES/PROCEDURES: re: 6 Notice of Entry of Appearance, 7 Notice of Entry of Appearance filed by attorney Timothy R. Macdonald. **DO NOT REFILE THE DOCUMENT. The phone number in the contact information on document does not reflect what is on the docket. Action to take –** counsel must submit a change of contact request through the Manage my Account tab at the PACER website at https://www.pacer.gov/, pursuant to D.C.COLO.LAttyR 5(c) and 3.5 of the Electronic Case Filing Procedures (Civil cases). (Text Only Entry) (ggill, ) (Entered: 04/15/2025) |
| 04/13/2025 | 18 | ADVISORY NOTICE OF NONCOMPLIANCE WITH COURT RULES/PROCEDURES: re: 8 Notice of Entry of Appearance filed by attorney Emma K. Mclean–Riggs. **DO NOT REFILE THE DOCUMENT. Action to take –** The phone number in the contact information on document does not reflect what is on the docket. Counsel must submit a change of contact request through the Manage my Account tab at the PACER website at https://www.pacer.gov/, pursuant to D.C.COLO.LAttyR 5(c) and 3.5 of the Electronic Case Filing Procedures (Civil cases). (Text Only Entry) (ggill, ) (Entered: 04/15/2025) |
| 04/14/2025 | 9 | Magistrate Judge consent form issued pursuant to 28 U.S.C. 636(c). Summons not issued for Petitions for Writ of Habeas Corpus. (agarc, ) (Entered: 04/14/2025) |
| 04/14/2025 | 10 | MINUTE ORDER: Before the Court is Petitioners'–Plaintiffs' Emergency Motion for Temporary Restraining Order (TRO). ECF No. 2 . Pursuant to the All Writs Act, 28 U.S.C. § 1651(a), and in order to preserve the Court's jurisdiction, Defendants SHALL NOT REMOVE Petitioners from the District of Colorado or the United States unless |

| | | or until this Court or the Court of Appeals for the Tenth Circuit vacates this Order. See also Vizguerra–Ramirez v. Choate, et. al, Case No. 1:25–cv–881, D. Colo., ECF No. 11 at 4–5 (collecting cases); F.T.C. v. Dean Foods Co., 384 U.S. 597, 603 (1966); Local 1814, Int'l Longshoremen's Ass'n v. New York Shipping Ass'n, 965 F.2d 1224, 1237 (2d Cir. 1992). To the extent they have not yet done so, no later than today, April 14, 2025, Petitioners' counsel is directed (1) to serve Respondents with a copy of the TRO motion and accompanying papers, along with a copy of this Order, by e–mail to the United States Attorney's Office for the District of Colorado and by overnight mail; and (2) to promptly file proof of such service on the docket. Counsel for Defendants shall promptly enter notices of appearance. Defendants are further ordered to RESPOND to Petitioners' TRO motion by THURSDAY, April 17, 2025. See, e.g., Gurchiani v. Garland, No. 23–9588, 2025 WL 46446, at *5 n.11 (10th Cir. Jan. 8, 2025) (noting "importance of adversarial briefing"). The parties are hereby ORDERED to appear for a hearing on Petitioners' TRO motion on Monday, April 21, 2025, at 9:00 a.m. in Courtroom A702 of the Alfred A. Arraj Courthouse. By Judge Charlotte N. Sweeney on 4/14/2025. Text Only Entry (cnsja, ) (Entered: 04/14/2025) |
| 04/14/2025 | 11 | ORDER granting 3 Motion for Leave to Proceed Under Pseudonym, by Judge Charlotte N. Sweeney on 4/14/2025.(cnsja, ) (Entered: 04/14/2025) |
| 04/14/2025 | 12 | NOTICE of Entry of Appearance by Anna I. Kurtz on behalf of D.B.U., R.M.M. Attorney Anna I. Kurtz added to party D.B.U. (pty:pet), Attorney Anna I. Kurtz added to party R.M.M. (pty:pet) (Kurtz, Anna) (Entered: 04/14/2025) |
| 04/14/2025 | 13 | Emergency MOTION to Clarify by Petitioners D.B.U., R.M.M.. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Macdonald, Timothy) (Entered: 04/14/2025) |
| 04/14/2025 | 14 | ORDER granting 13 Emergency Motion to Clarify. Upon review of Petitioners' emergency motion to clarify, ECF No. 13, the motion is GRANTED. The order issued by the Court at ECF No. 10 prohibits the removal from this jurisdiction of Petitioners and the class they propose to represent; namely, "All noncitizens in custody in the District of Colorado who were, are, or will be subject to the March 2025 Presidential Proclamation entitled Invocation of the Alien Enemies Act Regarding the Invasion of the United States by Tren de Aragua and/or its implementation." This order shall remain in effect for no longer than fourteen (14) days, as the Court has set a hearing on this matter for April 21, 2025, and will promptly issue an order as to the motion for a TRO. By Judge Charlotte N. Sweeney on 4/14/2025. Text Only Entry(cnsja, ) (Entered: 04/14/2025) |
| 04/14/2025 | 15 | AFFIDAVIT/RETURN of Service *Pursuant to Court Order (ECF 10)* of Court Filings and Order upon Respondents on 4/14/2025, filed by Petitioners D.B.U., R.M.M. (Attachments: # 1 Exhibit A, Email String, # 2 Exhibit B, Service Tracking and Receipt)(Neel, Sara) (Entered: 04/14/2025) |
| 04/14/2025 | 16 | NOTICE of Entry of Appearance by Kevin Thomas Traskos on behalf of Dawn Ceja, Donald J. Trump, Pamela Bondi, Kristi Noem, US Department of Homeland Security, Todd Lyons, US Immigration and Customs Enforcement, Marco Rubio, US State Department, Robert GaudianAttorney Kevin Thomas Traskos added to party Dawn Ceja(pty:res), Attorney Kevin Thomas Traskos added to party Donald J. Trump(pty:res), Attorney Kevin Thomas Traskos added to party Pamela Bondi(pty:res), Attorney Kevin Thomas Traskos added to party Kristi Noem(pty:res), Attorney Kevin Thomas Traskos added to party US Department of Homeland Security(pty:res), Attorney Kevin Thomas Traskos added to party Todd Lyons(pty:res), Attorney Kevin Thomas Traskos added to party US Immigration and |

| | | |
|---|---|---|
| | | Customs Enforcement(pty:res), Attorney Kevin Thomas Traskos added to party Marco Rubio(pty:res), Attorney Kevin Thomas Traskos added to party US State Department(pty:res), Attorney Kevin Thomas Traskos added to party Robert Gaudian(pty:res) (Traskos, Kevin) (Entered: 04/14/2025) |
| 04/14/2025 | 19 | ADVISORY NOTICE OF NONCOMPLIANCE WITH COURT RULES/PROCEDURES: re: 12 Notice of Entry of Appearance filed by attorney Anna I. Kurtz. **DO NOT REFILE THE DOCUMENT. Action to take –** The phone number in the contact information on document does not reflect what is on the docket. Counsel must submit a change of contact request through the Manage my Account tab at the PACER website at https://www.pacer.gov/, pursuant to D.C.COLO.LAttyR 5(c) and 3.5 of the Electronic Case Filing Procedures (Civil cases). (Text Only Entry) (ggill, ) (Entered: 04/15/2025) |
| 04/16/2025 | 20 | Unopposed MOTION for Leave to Appear *and Argue Remotely* by Petitioners D.B.U., R.M.M.. (Macdonald, Timothy) (Entered: 04/16/2025) |
| 04/16/2025 | 21 | MINUTE ORDER: A public telephone call–in line will be made available for the hearing scheduled for April 21, 2025 at 9:00 a.m. Those who wish to listen–only may dial 571–353–2301 and enter access code 770126989#. The Court reminds all callers that pursuant to Local Rule (D.C.COLO.LCrR 57.3), the recording of these proceedings is prohibited. By Judge Charlotte N. Sweeney on 4/16/2025. Text Only Entry (cnsja, ) (Entered: 04/16/2025) |
| 04/16/2025 | 22 | ORDER: Before the Court is Petitioners – Plaintiffs' Unopposed Motion to Appear and Argue Remotely at the hearing on Petitioners' Emergency Motion for Temporary Restraining Order set for Monday, April 21 at 9:00 a.m. ECF No. 20 . Through that request, Petitioners seek to allow Lee Gerlernt to appear remotely and argue the motion. The motion is DENIED. Four ACLU lawyers located in Colorado have entered their appearance in this case and can present argument if Mr. Gerlernt is unable to travel. In addition, the Motion (ECF No. 20 ) itself lists no less than thirteen (13) other lawyers who also represent the Petitioners. Thus, should Mr. Gelernt elect not to travel, the Court is confident that one of the other seventeen (17) attorneys will be able to argue the motion in his absence. By Judge Charlotte N. Sweeney on 4/16/2025. Text Only Entry(cnsja, ) Modified on 4/17/2025 to edit text. (sphil, ). (Entered: 04/16/2025) |
| 04/16/2025 | 23 | AFFIDAVIT/RETURN of Service of Class Petition for Writ of Habeas Corpus upon DONALD J. TRUMP, in his official capacity as President of the United States; PAMELA BONDI, Attorney General of the United States, in her official capacity; KRISTI NOEM, Secretary of the U.S. Department of Homeland Security, in her official capacity; TODD LYONS, Acting Director of U.S. Immigration and Customs Enforcement, in his official capacity; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; MARCO RUBIO, Secretary of State, in his official capacity; U.S. STATE DEPARTMENT; ROBERT GAUDIAN, Director of the Denver Field Office for U.S. Immigration and Customs Enforcement, in his official capacity; DAWN CEJA, Warden, Denver Contract Detention Facility, in her official capacity on 4/16/2025, filed by Petitioners D.B.U., R.M.M. (Attachments: # 1 Exhibit A)(Neel, Sara) (Entered: 04/16/2025) |
| 04/17/2025 | 24 | NOTICE of Entry of Appearance by Lee Gelernt on behalf of D.B.U., R.M.M. Attorney Lee Gelernt added to party D.B.U. (pty:pet), Attorney Lee Gelernt added to party R.M.M. (pty:pet) (Gelernt, Lee) (Entered: 04/17/2025) |

| 04/17/2025 | 25 | NOTICE of Entry of Appearance by Omar C. Jadwat on behalf of D.B.U., R.M.M. Attorney Omar C. Jadwat added to party D.B.U. (pty:pet), Attorney Omar C. Jadwat added to party R.M.M. (pty:pet) (Jadwat, Omar) (Entered: 04/17/2025) |
|---|---|---|
| 04/17/2025 | 26 | RESPONSE to 2 Emergency MOTION for Temporary Restraining Order filed by Respondents Dawn Ceja, Donald J. Trump, Pamela Bondi, Kristi Noem, US Department of Homeland Security, Todd Lyons, US Immigration and Customs Enforcement, Marco Rubio, US State Department, Robert Gaudian. (Attachments: # 1 Exhibit 1 – Valdez Declaration, # 2 Exhibit 2 – Elliston Declaration)(Traskos, Kevin) (Entered: 04/17/2025) |
| 04/18/2025 | 27 | NOTICE of Entry of Appearance by Michael Kenneth Velchik on behalf of All Defendants (Velchik, Michael) (Entered: 04/18/2025) |
| 04/18/2025 | 28 | NOTICE of Entry of Appearance *Lunn* by Laura Patricia Lunn on behalf of D.B.U., R.M.M. Attorney Laura Patricia Lunn added to party D.B.U. (pty:pet), Attorney Laura Patricia Lunn added to party R.M.M. (pty:pet) (Lunn, Laura) (Entered: 04/18/2025) |
| 04/18/2025 | 29 | NOTICE of Entry of Appearance *Goodlette* by Laura Patricia Lunn on behalf of D.B.U., R.M.M. (Lunn, Laura) (Entered: 04/18/2025) |
| 04/18/2025 | 30 | NOTICE of Entry of Appearance *Sherman* by Laura Patricia Lunn on behalf of D.B.U., R.M.M. (Lunn, Laura) (Entered: 04/18/2025) |
| 04/20/2025 | 31 | REPLY to Response to 2 Emergency MOTION for Temporary Restraining Order filed by Petitioners D.B.U., R.M.M.. (Attachments: # 1 Exhibit A – Notices, # 2 Exhibit B – Sherman Declaration)(Macdonald, Timothy) (Entered: 04/20/2025) |
| 04/21/2025 | 32 | ADVISORY NOTICE OF NONCOMPLIANCE WITH COURT RULES/PROCEDURES: re: 27 Notice of Entry of Appearance filed by attorney Michael Kenneth Velchik. **DO NOT REFILE THE DOCUMENT. Action to take –** counsel must submit a change of contact request through the Manage my Account tab at the PACER website at https://www.pacer.gov/, pursuant to D.C.COLO.LAttyR 5(c) and 3.5 of the Electronic Case Filing Procedures (Civil cases).(Text Only Entry) (dgumb, ) (Entered: 04/21/2025) |
| 04/21/2025 | 33 | ADVISORY NOTICE OF NONCOMPLIANCE WITH COURT RULES/PROCEDURES: re: 30 Notice of Entry of Appearance, 29 Notice of Entry of Appearance filed by attorney Laura Patricia Lunn. The s/signature did not match the filers name on the account for which the login and password are registered. **DO NOT REFILE THE DOCUMENT. Action to take –** future documents must be filed pursuant to D.C.COLO.LCivR 5.1(a) and 4.3(c) of the Electronic Case Filing Procedures (Civil cases).(Text Only Entry) (dgumb, ) (Entered: 04/21/2025) |
| 04/21/2025 | 34 | MINUTE ENTRY for proceedings held before Judge Charlotte N. Sweeney: Motion Hearing held on 4/21/2025. 2 Motion for Temporary Restraining Order is TAKEN UNDER ADVISEMENT, written order to issue. Court Reporter: Sarah Mitchell. (jdyne, ) (Entered: 04/21/2025) |
| 04/22/2025 | 35 | ORDER granting 2 Plaintiffs–Petitioners' Emergency Motion for Temporary Restraining Order. By Judge Charlotte N. Sweeney on 4/22/25.(jdyne, ) (Entered: 04/22/2025) |
| 04/22/2025 | 36 | TRANSCRIPT of Motion Hearing – Temporary Restraining Order held on April 21, 2025 before Judge Sweeney. Pages: 1–39.<br> **NOTICE – REDACTION OF TRANSCRIPTS: Within seven calendar days of** |

| | | |
|---|---|---|
| | | **this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal identifiers from the electronic transcript of the court proceeding. If a Notice of Intent to Redact is not filed within the allotted time, this transcript will be made electronically available after 90 days. Please see the Notice of Electronic Availability of Transcripts document at www.cod.uscourts.gov.** Transcript may only be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber prior to the 90 day deadline for electronic posting on PACER. (smitc, ) (Entered: 04/22/2025) |
| 04/23/2025 | 37 | Joint MOTION for Leave to File Excess Pages *for Petitioners' Motion for Preliminary Injunction and Respondents' Response* by Petitioners D.B.U., R.M.M.. (Neel, Sara) (Entered: 04/23/2025) |
| 04/23/2025 | 38 | NOTICE OF APPEAL as to 35 Order on Motion for TRO, 10 Minute Order,,,,,, 14 Order on Motion to Clarify,,, by Respondents Dawn Ceja, Donald J. Trump, Pamela Bondi, Kristi Noem, US Department of Homeland Security, Todd Lyons, US Immigration and Customs Enforcement, Marco Rubio, US State Department, Robert Gaudian (Traskos, Kevin) (Entered: 04/23/2025) |
| 04/23/2025 | 39 | LETTER Transmitting Notice of Appeal to all counsel advising of the transmittal of the 38 Notice of Appeal, filed by US Immigration and Customs Enforcement, Robert Gaudian, US Department of Homeland Security, Dawn Ceja, Todd Lyons, Pamela Bondi, Kristi Noem, Marco Rubio, US State Department, Donald J. Trump to the U.S. Court of Appeals. (Attachments: # 1 Preliminary Record)(norlin, ) (Entered: 04/23/2025) |
| 04/23/2025 | 40 | Emergency MOTION for Order to *Stay Relief Pending Appeal* by Respondents Dawn Ceja, Donald J. Trump, Pamela Bondi, Kristi Noem, US Department of Homeland Security, Todd Lyons, US Immigration and Customs Enforcement, Marco Rubio, US State Department, Robert Gaudian. (Traskos, Kevin) (Entered: 04/23/2025) |
| 04/23/2025 | 43 | USCA Case Number 25–1164 for 38 Notice of Appeal, filed by US Immigration and Customs Enforcement, Robert Gaudian, US Department of Homeland Security, Dawn Ceja, Todd Lyons, Pamela Bondi, Kristi Noem, Marco Rubio, US State Department, Donald J. Trump. (sphil, ) (Entered: 04/24/2025) |
| 04/24/2025 | 41 | ORDER granting 37 Joint Motion for Leave to File Excess Pages for Petitioners–Plaintiffs' Motion for Preliminary Injunction and Respondents' Response. The parties are granted leave to exceed the page limits as set forth in CNS Civ. Practice Standard 10.1(c). Petitioner–Plaintiffs may file up to a 35–page Motion for Preliminary Injunction, and Respondent–Defendants may file up to a 35–page Response brief. By Judge Charlotte N. Sweeney on 4/24/2025. Text Only Entry(cnsja, ) (Entered: 04/24/2025) |
| 04/24/2025 | 42 | ORDER: Before the Court is Respondents' opposed Emergency Motion For Order on Stay of Relief Pending Appeal. ECF No. 40 . The Motion is DENIED. By Judge Charlotte N. Sweeney on 4/25/2025. Text Only Entry(cnsja, ) (Entered: 04/24/2025) |
| 04/24/2025 | 44 | NOTICE *of Cisneros Declaration* by Petitioners D.B.U., R.M.M. (Attachments: # 1 Exhibit A – Cisneros Declaration)(Neel, Sara) (Entered: 04/24/2025) |
| 04/25/2025 | 45 | MOTION for Preliminary Injunction by Petitioners D.B.U., R.M.M.. (Attachments: # 1 Exhibit Index, # 2 Exhibit A, Decl Rebecca Hanson, # 3 Exhibit B, Decl Andres Antillano, # 4 Exhibit C, Decl Steven Dudley, # 5 Exhibit D, Decl Sarah Bishop, # 6 |

| | | |
|---|---|---|
| | | Exhibit E, Decl Juanita Goebertus, # 7 Exhibit F, Decl Paulina Reyes, # 8 Exhibit G, Decl Linette Tobin, # 9 Exhibit H, Decl Oscar Sarabia Roman, # 10 Exhibit I, Decl Monique Sherman, # 11 Exhibit J, Decl Henry D. Hollithron)(Neel, Sara) (Entered: 04/25/2025) |
| 04/28/2025 | 46 | RESPONSE to 4 MOTION to Certify Class filed by Respondents Dawn Ceja, Donald J. Trump, Pamela Bondi, Kristi Noem, US Department of Homeland Security, Todd Lyons, US Immigration and Customs Enforcement, Marco Rubio, US State Department, Robert Gaudian. (Traskos, Kevin) (Entered: 04/28/2025) |
| 04/29/2025 | 47 | ORDER of USCA as to 38 Notice of Appeal, filed by US Immigration and Customs Enforcement, Robert Gaudian, US Department of Homeland Security, Dawn Ceja, Todd Lyons, Pamela Bondi, Kristi Noem, Marco Rubio, US State Department, Donald J. Trump. (USCA Case No. 25−1164). The emergency motion for a stay is DENIED. (sphil, ) (Entered: 04/30/2025) |
| 04/30/2025 | 48 | RESPONSE to 45 MOTION for Preliminary Injunction filed by Respondents Dawn Ceja, Donald J. Trump, Pamela Bondi, Kristi Noem, US Department of Homeland Security, Todd Lyons, US Immigration and Customs Enforcement, Marco Rubio, US State Department, Robert Gaudian. (Velchik, Michael) (Entered: 04/30/2025) |
| 05/02/2025 | 49 | REPLY to Response to 45 MOTION for Preliminary Injunction filed by Petitioners D.B.U., R.M.M.. (Gelernt, Lee) (Entered: 05/02/2025) |
| 05/02/2025 | 50 | REPLY to Response to 4 MOTION to Certify Class filed by Petitioners D.B.U., R.M.M.. (Gelernt, Lee) (Entered: 05/02/2025) |
| 05/06/2025 | 51 | ORDER granting 4 Motion to Certify Class. By Judge Charlotte N. Sweeney on 5/6/2025.(cnsja, ) (Entered: 05/06/2025) |
| 05/06/2025 | 52 | ORDER granting 45 Motion for Preliminary Injunction. By Judge Charlotte N. Sweeney on 5/6/2025.(cnsja, ) (Entered: 05/06/2025) |
| 05/12/2025 | 53 | USCA Order as to 38 Notice of Appeal, filed by US Immigration and Customs Enforcement, et al : Appellants Motion for Voluntarily Dismissal is GRANTED.(USCA Case No. 25−1164) (This document is not the Mandate) (sphil, ) (Entered: 05/12/2025) |
| 05/12/2025 | 54 | MANDATE of USCA as to 38 Notice of Appeal, filed by US Immigration and Customs Enforcement, et al, 53 USCA Order/Opinion/Judgment : (USCA Case No. 25−1164) (sphil, ) (Entered: 05/12/2025) |
| 07/07/2025 | 55 | NOTICE OF APPEAL as to 52 Order on Motion for Preliminary Injunction, 51 Order on Motion to Certify Class by Respondents Dawn Ceja, Donald J. Trump, Pamela Bondi, Kristi Noem, US Department of Homeland Security, Todd Lyons, US Immigration and Customs Enforcement, Marco Rubio, US State Department, Robert Gaudian (Velchik, Michael) (Entered: 07/07/2025) |

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:25-cv-01163-CNS

D.B.U. and R.M.M., on behalf of themselves and others similarly situated,

      Petitioners-Plaintiffs,

v.

DONALD J. TRUMP, in his official capacity as President of the United States:
PAMELA BONDI, Attorney General of the United States, in her official capacity;
KRISTI NOEM, Secretary of the U.S. Department of Homeland Security, in her official
capacity;
U.S. DEPARTMENT OF HOMELAND SECURITY;
TODD LYONS, Acting Director of U.S. Immigration and Customs Enforcement, in his
official capacity;
U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT;
MARCO RUBIO, Secretary of State, in his official capacity;
U.S. STATE DEPARTMENT;
ROBERT GAUDIAN, Director of the Denver Field Office for U.S. Immigration and
Customs Enforcement, in his official capacity; and
DAWN CEJA, Warden, Denver Contract Detention Facility, in her official capacity,

      Respondents-Defendants.

---

## ORDER

---

      Before the Court is Petitioners D.B.U. and R.M.M.'s Motion for Class Certification.

ECF No. 4. The Court GRANTS Petitioners' class certification motion, certifying the class

Petitioners seek to represent:

> All noncitizens in custody in the District of Colorado who were, are, or will
> be subject to the March 2025 Presidential Proclamation entitled 'Invocation
> of the Alien Enemies Act Regarding the Invasion of the United States by
> Tren de Aragua' and/or its implementation.

1

The Court's Order proceeds as follows. First, it recounts this case's relevant legal, factual, and procedural background. Second, it discusses the parties' arguments as to which—if any—legal framework governs Petitioners' certification motion. Discussed further below, Federal Rule of Civil Procedure 23 applies in the Court's analysis of Petitioners' certification motion. And third, the Court analyzes Petitioners' certification motion under Rule 23's standard. The Court's analysis leads to this conclusion: Petitioners have satisfied Rule 23's requirements, and therefore class certification is proper.

## I.      BACKGROUND

The Court presumes the parties' familiarity with this case's legal, factual, and procedural background. Proceeding from this presumption, the Court recites facts relevant to the resolution of Petitioners' certification motion.

### A.  Legal Background

On March 14, 2025, President Donald J. Trump signed a proclamation designated Tren de Aragua (TdA) a "Foreign Terrorist Organization" and declaring, among other things, TdA is "perpetuating, attempting, and threatening an alien invasion or predatory incursion against the territory of the United States." Invocation of the Alien Enemies Act Regarding the Invasion of the United States by Tren de Aragua, 90 Fed. Reg. 13,033 (Mar. 14, 2025). The Proclamation's declarations, findings, directions were made "[p]ursuant to [the President's] authority," *id*., under 50 U.S.C. § 21—the Alien Enemies Act.

Plaintiffs in other jurisdictions have challenged their detentions and removals under the Act. *See, e.g., J.G.G. v. Trump*, Civil Action No. 25-766 (JEB), --- F. Supp. 3d ----, 2025 WL 890401, at *1 (D.D.C. Mar. 24, 2025) ("In the predawn hours of Saturday, March 15, five Venezuelan noncitizens being held in Texas by the Department of Homeland Security sought emergency relief in this Court. They justifiably feared that, in a matter of hours, they might be removed from the country pursuant . . . the Alien Enemies Act of 1798.").

The Supreme Court has issued guidance in these challenges' legal issues in two instances. First, by declaring individuals detained under the Act are entitled to "judicial review" as to "questions of interpretation and constitutionality" about the Act. *Trump v. J. G. G.*, --- U.S. at ----, 2025 WL 1024097, at *2 (per curiam). Second, by later directing the government "not to remove" members of a putative class of detainees "from the United States until further order" from the Supreme Court. *A.A.R.P. v. Trump*, No. 24A1007, ---U.S. ----, 2025 WL 1147581, at *1 (U.S. Apr. 19, 2025) (citing 28 U. S. C. § 1651(a)); *see also A.A.R.P. v. Trump*, No. 1:25-CV-059-H, --- F. Supp. 3d ----, 2025 WL 1148140, at *1 (N.D. Tex. Apr. 17, 2025).

### B. Factual Background

Petitioners D.B.U. and R.M.M. are Venezuelan citizens presently detained at the ICE Denver Contract Detention Facility (the Facility). In an April 17, 2025, immigration proceeding, an immigration judge indicated that Immigrations and Customs Enforcement (ICE) "suggests that D.B.U. has a gang affiliation." In a Form 1-213 statement, ICE identified R.M.M. as an "Associate/Active" of TdA, and that R.M.M. is a "known member"

of TdA. Both D.B.U. and R.M.M. deny TdA membership, but are at "grave risk" of ICE "alleging that" they are TdA members. *See* ECF Nos. 2-1; 2-2.

Following the Court's April 22, 2025, order granting Petitioners' request for a temporary restraining order, in which the Court set forth notice requirements to which Respondents must adhere as a matter of due process, Respondents represent the notices they provide detainees in this judicial district comply with the Court's notice requirements. *See* ECF No. 48 at 6 n.1.

### C. Procedural Background

Petitioners filed several motions contemporaneously with their Class Petition for Writ of Habeas Corpus and Class Complaint for Declaratory and Injunctive relief, including the instant certification motion. ECF No. 4. On April 14, 2025, pursuant to the All Writs Act, the Court issued an order prohibiting Respondents from removing Petitioners from this judicial district. ECF No. 10. Following oral argument, the Court granted Petitioners' Emergency Motion for Temporary Restraining Order, effective through May 6, 2025, and provisionally certified the class Petitioners seek to represent. ECF No. 35; *D.B.U. v. Trump*, --- F. Supp. 3d ----, No. 1:25-cv-01163-CNS, 2025 WL 1163530, at *5 (D. Colo. Apr. 22, 2025). In its April 22, 2025 order, granting Petitioners' TRO request, the Court set forth a briefing schedule for the instant motion. The parties timely complied with the Court's briefing schedule, so the instant motion is fully briefed. ECF No. 46; ECF No. 50.

## II.     LEGAL STANDARD

Before setting forth the applicable legal standard, the Court settles the parties' arguments attendant to it—specifically, whether class certification in the habeas context is possible, and if so what standard applies to habeas certification.

### A.  Availability of Class Actions in Habeas Proceedings

As a preliminary matter, the Court must decide which certification framework governs its analysis of Petitioners' habeas claims, and whether Petitioners may proceed with their habeas claims on a class basis. Applying settled equitable certification principles, they can.

Respondents argue class proceedings for habeas claims are improper. *See, e.g.,* ECF No. 46 at 5. The Court disagrees. The parties cite competing legal authority on this issue. *Compare id.*, *with* ECF No. 4 at 6 n.4. But at least one court has considered this precise issue and certified an analogous class of

> Venezuelan aliens, 14 years old or older, who have not been naturalized, who Respondents have designated or in the future designate as alien enemies under the March 14, 2025, Presidential Proclamation entitled 'Invocation of the Alien Enemies Act Regarding the Invasion of the United States by Tren De Aragua', 90 Fed. Reg. 13033, and who are detained or reside in the Southern District of Texas.

*J.A.V. v. Trump*, No. 1:25-CV-072, --- F.R.D. ----, 2025 WL 1256996, at *6 (S.D. Tex. May 1, 2025).

*J.A.V.* provides a persuasive and instructive discussion of class certification in a habeas proceeding, and whether Rule 23 applies in a habeas proceeding. *See id.* at *1. To be sure, Respondents are correct in arguing there is no dispositive case on the matter. ECF No. 46 at 6. *See also Schall v. Martin*, 467 U.S. 253, 261 n.5 (1984) ("We have never

decided whether Federal Rule of Civil Procedure 23, providing for class actions, is applicable to petitions for habeas corpus relief."). But the Tenth Circuit, acknowledging this, has endorsed what is essentially the application of Rule 23 when habeas petitioners seek to represent a class. *See Napier v. Gertrude*, 542 F.2d 825, 827 n.2 (10th Cir. 1976) ("It has been decided in other circuits that Rule 23 class actions are technically inapplicable to habeas corpus proceedings. The court may, however, apply an analogous procedure by reference to Rule 23 in proper circumstances."). Other federal appellate courts, as discussed in *J.A.V.*, 2025 WL 1256996, at *2, are in accord. *See, e.g., Cox v. McCarthy*, 829 F.2d 800, 804 (9th Cir. 1987) ("This court has held that a class action may lie in habeas corpus." (citation omitted)); *LoBue v. Christopher*, 82 F.3d 1081, 1085 (D.C. Cir. 1996) ("[C]laim[ing] that there is no equivalent to class actions in habeas, [is] wrong, for courts have in fact developed such equivalent." (citations omitted)); *U.S. ex rel. Sero v. Preiser*, 506 F.2d 1115, 1124 (2d Cir. 1974); *Williams v. Richardson*, 481 F.2d 358, 361 (8th Cir. 1973).

The Court finds these cases, and *J.A.V.*'s discussion of them in a virtually identical factual circumstance, persuasive. Accordingly, the Court rejects Respondents' argument there is no basis for proceeding in habeas on a class basis. Exercising its power under the All Writs Act, 28 U.S.C. § 1651, the Court—consistent with Tenth Circuit precedent— applies Rule 23 in its analysis of Petitioners' claims. *See, e.g., J.A.V.*, 2025 WL 1256996, at *2 ("When determining whether a procedure analogous to a Rule 23 class action is appropriate in a particular habeas corpus proceeding, courts can consider the Rule 23 factors.") (citing *Napier*, 542 F.2d at 827 n.2). Because habeas class proceedings are

6

permissible and adopt Rule 23's requirements, to the extent the Court discusses legal authority attendant to standard Rule 23 class actions those authorities are applicable to the Court's analysis of Petitioners' instant motion to certify a habeas class. *See Napier*, 542 F.2d at 827 n.2

### B. Governing Legal Standard

The class action is an exceptional procedural mechanism, permitting a named plaintiff or petitioner to represent a class "whose claims they wish to litigate." *Colorado Cross Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1213 (10th Cir. 2014) (quotations omitted); *see also Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 408 (2010) ("A class action ... enables a federal court to adjudicate claims of multiple parties at once, instead of in separate suits."). To certify a class action, plaintiffs or petitioners must first satisfy Federal Rule of Civil Procedure 23(a)'s requirements: numerosity, commonality, typicality, and adequacy. Fed. R. Civ. P. 23(a); *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011). Second, plaintiffs must show through "evidentiary proof" that at least one of three conditions defined in Federal Rule of Civil Procedure 23(b) is satisfied. *Colorado Cross Disability*, 765 F.3d at 1213 (citation omitted); *see also Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1228 (10th Cir. 2013).

"In determining the propriety of a class action, the question is not whether plaintiffs or petitioners have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974) (quotations omitted). Plaintiffs or Petitioners must satisfy the "preponderance" evidentiary standard at the class certification stage. *See, e.g., White v. Gen. Motors LLC*,

No. 1:21-cv-00410-CNS-MEH, 2023 WL 3278460, at *3 (D. Colo. May 5, 2023) (discussing courts' application of various evidentiary standards at certification stage and adopting the preponderance standard); *Payne v. Tri-State CareFlight, LLC*, 328 F.R.D. 601, 621 n.12 (D.N.M. 2018) ("[A]lthough the Tenth Circuit has not yet explicitly adopted the preponderance standard for fact-finding in class certification analyses, it most likely will, and the Court will employ that standard here." (collecting cases)); *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 665 (9th Cir.) (en banc), *cert. denied sub nom. StarKist Co. v. Olean Wholesale Grocery Coop., Inc.*, 143 S. Ct. 424 (2022) ("Because the application of Rule 23 to certify a class does not alter the defendants' rights or interests in a substantive way, there is no basis for applying a heightened standard of proof beyond the traditional preponderance standard.").

### III.    ANALYSIS

The parties' certification dispute is easily summarized. Petitioners argue they have met Federal Rule of Civil Procedure 23's certification requirements. Respondents disagree, arguing—regardless of whether certified under Rule 23 or equitable habeas principles—Petitioners have not met their certification burden. Having considered the parties' arguments, the Court concludes Petitioners have met their certification burden, and that certification of the class they seek to represent is proper. In arriving at this conclusion, the Court analyzes Rule 23(a)'s factors in turn, before turning to Rule 23(b)(2).

## A. Rule 23(a)

### i. Numerosity

Petitioners argue they satisfy Rule 23(a)'s numerosity requirement because "the proposed class is so numerous that joinder is impracticable." ECF No. 4 at 6. Respondents' briefing on this matter is limited to the observation that Petitioners must satisfy their numerosity burden. ECF No. 46 at 10. Notwithstanding Respondents' limited briefing on the issue, the Court agrees with Petitioners and is satisfied they meet their numerosity burden.

Under Rule 23(a)(1), plaintiffs or petitioners must show "that the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Rule 23(a)'s numerosity inquiry is not a blunt "question of numbers." *Horn v. Associated Wholesale Grocers, Inc*., 555 F.2d 270, 275 (10th Cir. 1977). Assessing a class's numerosity is a "fact-specific inquiry," calling for the consideration of certain factors, including: "the nature of the action, the size of the individual claims, and the location of the members of the class or the property that is the subject matter of the dispute." *Colorado Cross Disability*, 765 F.3d at 1215 (quotations omitted).

Considering these factors, this is a habeas action in which Petitioners challenge the President's authority to detain individuals under the Proclamation and the Act, limited to the District of Colorado. And although numerosity is reducible to arithmetic, *see id*., Petitioners have met their burden of showing the number of detainees who are subject to the Proclamation or fall within the class definition is so numerous as to render joinder impracticable. The Court's conclusion is bolstered by Respondents' failure to

9

meaningfully brief this issue, essentially conceding it. *See Am. Tradition Inst. v. Colorado*, 876 F. Supp. 2d 1222, 1237 (D. Colo. 2012). Accordingly, the Court proceeds in its Rule 23(a) analysis. *Lozoya v. AllPhase Landscape Constr., Inc.*, No. 12-cv-1048-JLK, 2015 WL 1524639, at *1 (D. Colo. Mar. 31, 2015) (proceeding in discussion of Rule 23(a)'s factors after defendants "[did] not appear to dispute that the numerosity requirement is satisfied"). And to the extent that Petitioners' class must be ascertainable, see *White*, 2023 WL 3278460, at *7, it is, given there are objective criteria that make the class "capable of being determined"—whether a detainee is or will be subject to the Proclamation—and a class action is "administratively feasible," given Petitioners' class definition is sufficiently finite for the Court to "determine whether a particular individual is a member of the proposed class," *id.* (quotations omitted).

### ii. Commonality

As to commonality, *see* Fed. R. Civ. P. 23(a)(2), Petitioners assert that because the proposed class's claims "include common questions of law and fact" that they meet their commonality burden. ECF No. 4 at 9; *see also* Fed. R. Civ. P. 23(a)(2). Respondents resist, on the basis Petitioners' "contentions are not shared by the class." ECF No. 46 at 13. Specifically, that "Petitioners—who are not detained under the [Act]—do not share [an] interest in common with those of class members." ECF No. 46 at 13. The Court agrees with Petitioners they have met their commonality burden.

Rule 23(a)(2) is disjunctive: a plaintiff may satisfy its commonality requirement if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2); *see also Milonas v. Williams*, 691 F.2d 931, 938 (10th Cir. 1982) ("In determining whether the

... commonality requirement[ ] ha[s] been fulfilled, either common questions of law or fact presented by the class will be deemed sufficient."). In determining whether plaintiffs or petitioners have satisfied Rule 23(a)(2)'s commonality requirement, courts ask whether the class claims "depend upon a common contention . . . capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at 350. "What matters to class certification . . . is not the raising of common questions—even in droves—but rather, the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation." *Id*. (quotations omitted). "A finding of commonality requires only a single question of law or fact common to the entire class." *Menocal v. GEO Grp., Inc*., 882 F.3d 905, 914 (10th Cir. 2018) (quotations omitted); *see also Wal-Mart*, 564 U.S. at 359 ("We quite agree that for purposes of Rule 23(a)(2) even a single common question will do." (quotations and alterations omitted)). "A common contention need not be one that will be answered, on the merits, in favor of the class." *Alcantar v. Hobart Serv*., 800 F.3d 1047, 1053 (9th Cir. 2015) (quotations omitted).

To be sure, Respondents properly argue that—based on the current record— D.B.U. and R.M.M., the class's named representatives, do not face circumstances congruent with other class members. Petitioners acknowledge D.B.U. and R.M.M. are not presently detained under the Proclamation and Act. ECF No. 50 at 6. But the Court agrees with Petitioners that the legal authority under which they are presently detained, the INA and Title 8, rather than the Proclamation and Act, is not fatal to establishing commonality. As discussed in the Court's TRO order, Respondents have failed to eliminate the

possibility Petitioners could soon become subject to the Act and Proclamation. *See, e.g., D.B.U.*, 2025 WL 1163530, at *5. This is particularly true where, in Petitioners' immigration proceedings, Respondents have suggested in immigration proceedings that D.B.U. has a gang affiliation, and R.M.M. is an associate or active TdA member. *See generally* ECF No. 2-1; ECF No. 2-2.

Under Rule 23(a)(2), Petitioners are not required to share the same factual circumstances of other class members, particularly where "questions of law"—whether present or future detainment of individuals under the Proclamation is constitutional or consistent with the Act's text—are "common to the class" Fed. R. Civ. P. 23(a)(2). *See also Milonas*, 691 F.2d at 938 ("In determining whether the . . . commonality requirement[] ha[s] been fulfilled, either common questions of law or fact presented by the class will be deemed sufficient.") (emphasis added).

The risk Petitioners face as to deportation under the Proclamation is sufficient for Rule 23(a)(2)'s requirement. Indeed, the Tenth Circuit has distanced Rule 23(a)(2) from the identical, factual overlap Respondents demand. *See, e.g., DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1196 (10th Cir. 2010) ("Though each class member may not have actually suffered abuse, neglect, or the risk of such harm, Defendants' conduct allegedly poses a risk of impermissible harm . . . .") (emphasis added). Therefore, contrary to Respondents' argument, it is of no moment for commonality purposes that Petitioners are currently detained under the INA and Title 8, when they face the risk of deportation under the Proclamation and Act, as underscored by Respondents' statements in immigration proceedings regarding Petitioners' TdA and gang affiliations. See ECF No.

46 at 13. *See also Stricklin*, 594 F.3d at 1197 (The shared risk of being subjected to the purportedly unconstitutional practices justified certification.") (emphasis added); *Milonas*, 691 F.2d at 938 ("[E]very member of the class need not be in a situation identical to that of the named plaintiff."). This is particularly true where a determination as to the legal question of whether the Proclamation is consistent with the Act and Constitution will "resolve an issue that is central to the validity" of Petitioner's habeas claims "in one stroke." *Wal-Mart*, 564 U.S. at 350; *see also Milonas*, 691 F.2d at 938 ("[A]ctual differences in the claims of the class members should not result in a denial of class certification where common questions of law exist." (citations omitted); *Stricklin*, 594 F.3d at 1197 ("We did not require the named plaintiffs in Milonas to prove either every class member had actually been subjected to the controverted practices or every class member had actually suffered constitutionally-cognizable harm . . . .") (emphases added).

Respondents elsewhere argue in their Rule 23(b)(2) discussion, *see* ECF No. 46 at 18, that "resolution of many of Petitioners' procedural and due process objections would require fact-specific inquires." ECF No. 46 at 15. For the sake of completeness, even construing this argument as attendant to Rule 23(a)(2)'s commonality requirement, it fails. The factual differences that may arise in class members' individual habeas proceedings do not destroy commonality. *See, e.g., Reid v. Donelan*, 17 F.4th 1, 11 (1st Cir. 2021) ("[A] class can be certified even if there are some individual issues that can be efficiently and fairly adjudicated individually."). Especially where, as discussed above, questions of law about the Proclamation are common to the class. *See* Fed. R. Civ. P 23(a)(2); *Milonas*, 691 F.2d at 938 ("Factual differences in the claims of the class

members should not result in a denial of class certification where common questions of law exist." (citation omitted) (emphasis added)). At least one court confronted with a virtually identical argument at the certification stage rejected it, and the Court—consistent with Tenth Circuit precedent—finds that court's reasoning persuasive. *See J.A.V.*, 2025 WL 1256996, at \*5 ("[T]he hearings themselves would proceed individually, as the relevant facts for each person differ. Still . . . the Court can utilize individualized hearings to receive evidence and adjudicate the relatively-narrow issue of the person's alleged membership in TdA." (citation omitted)); *Milonas*, 691 F.2d at 938.

Accordingly, for the reasons set forth above Petitioners have met their commonality burden.

### iii. Typicality

The parties' typicality arguments echo their commonality arguments. *Compare* ECF No. 4 at 11, *with* ECF No. 46 at 12. *See also Wal-Mart*, 564 U.S. at 350 n.5 ("[T]he commonality and typicality requirements of Rule 23(a) tend to merge." (alteration omitted)). Considering the parties' arguments under Rule 23(a)'s typicality rubric, Petitioners have met their typicality burden. *See* Fed. R. Civ. P. 23(a)(3) ("The claims or defenses of the representative parties [must be] typical of the claims or defenses of the class.") In reaching this conclusion, the Court considers Respondents' contrary arguments and explains why it rejects them.

First, Respondents argue that Petitioners "are not part of the proposed class," directing the Court again to the factual distinctions in Petitioners' detainment under the INA and Title 8, and the detainment of class members under the Proclamation and Act.

ECF No. 46 at 12. This argument failed to persuade as a matter of commonality and fails

again. Tenth Circuit precedent, by which the Court is bound, plainly forecloses it. *See*

*Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir. 1988) ("[D]iffering fact situations of class

members do not defeat typicality under Rule 23(a)(3) so long as the claims of the class

representative and class members are based on the same legal or remedial theory."

(citations omitted)); *Milonas*, 691 F.2d at 938 (concluding commonality and typicality

requirements were met where "all the [class members] were in danger of being subjected

to the [challenged] practices"); *Colorado Cross Disability*, 765 F.3d at 1216 ("The

commonality and typicality requirements of Rule 23(a) do not require that every member

of the class share a fact situation identical to that of the named plaintiff." (citation omitted));

*Menocal v. GEO Grp., Inc.*, 882 F.3d 905, 914 (10th Cir. 2018) ("[D]iffering fact situations

of class members do not defeat typicality . . . so long as the claims of the class

representative and class members are based on the same legal or remedial theory."

(quotations omitted)).

Second, Respondents argue that "a decision as to [Petitioners] will [not]

necessarily resolve a question for the class." ECF No. 46 at 12. Not so. A decision as to

whether Petitioners' risk of detainment under the Proclamation is illegal—and demanding

habeas relief—will necessarily resolve a common question for the class—whether class

members' detainment under the Proclamation is illegal. *See, e.g., Colorado Cross

Disability*, 765 F.3d at 1216; *Menocal*, 882 F.3d at 914; *Adamson*, 855 F.2d at 676. Any

factual differences between Petitioners' and class members' detainment does not disturb

this conclusion. *See* ECF No. 4 at 11; *Stricklin*, 594 F.3d at 1198 ("The interests and

claims of Named Plaintiffs and class members need not be identical to satisfy typicality."

(citation omitted) (emphasis added)).

Therefore, as with the Court's commonality analysis, Petitioners have met their

Rule 23(a)(3) typicality burden, and Respondents fail to persuade otherwise.

### iv. Adequacy

Petitioners, reciting Rule 23(a)(4)'s adequacy requirement, contend they satisfy it

because there is no conflict between the interest of Petitioners and class members, and

proposed class counsel are sufficiently experienced. ECF No. 4 at 12; *see also* Fed. R.

Civ. P. 23(a)(4) ("[T]he representative parties [must] fairly and adequately protect the

interests of the class.") In response, Respondents continue in their refrain: Petitioners

cannot meet their adequacy burden because facts distinguish "Petitioners from other

class members." ECF No. 46 at 14. The Court agrees with Petitioners they have met their

adequacy burden for three reasons.

First—and without belaboring the point—the Court has twice rejected

Respondents' "factual differences" argument. Just as this argument failed to persuade as

a matter of commonality and typicality, so too does it fail to persuade Petitioners' claims

are not adequately representative of class members' claims.

Second—and putting aside Respondents' failure to respond to this argument—

there are no conflicts between Petitioners' interest, the interests of class counsel, and

class members' interest. See ECF No. 4 at 12; *see also White*, 2023 WL 3278460, at *12

(D. Colo. May 5, 2023) ("Resolution of two questions determines legal adequacy,"

including whether "the named plaintiffs and their counsel have any conflicts of interest"

with other class members (quotations omitted)); *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 626 n.20 (1997) ("The adequacy heading also factors in competency and conflicts of class counsel." (citations omitted)). As Petitioners explain, they do not seek any unique relief contrary to the relief they seek on behalf of the class. *See* ECF No. 4 at 12. And for this reason, their interest in this litigation is aligned with class members' interests. The Court agrees with Petitioners there is no conflict between their interests and the interests of class members. *See, e.g., White*, 2023 WL 3278460, at *12 (concluding named plaintiff met adequacy burden where the named plaintiff "assert[ed] the same theory of liability . . . as other class members"); 1 Newberg and Rubenstein on Class Actions § 3:58 (6th ed.) ("Only conflicts that are fundamental to the suit and that go to the heart of litigation prevent a proposed class representative from meeting the Rule 23(a)(4) adequacy requirement." (footnotes omitted)).

Third, class counsel are sufficiently experienced to adequately represent the class. *See* ECF No. 4 at 12; ECF No. 4-1 at 1–3. Counsel for Petitioners and the class have litigated numerous class actions, and are amply qualified to serve as class counsel in this case. *See* ECF No. 4-1 at 1–3. Further, class counsel has litigated this action through the TRO phase, and now into certification and preliminary injunction briefing. For these reasons, class counsel have vigorously prosecuted this action on behalf of the class— and will continue to—thus satisfying Rule 23(a)(4)'s adequacy requirement. *See, e.g., White*, 2023 WL 3278460, at *12 (concluding named plaintiff and class counsel met adequacy burden where counsel had "vigorously been litigating" and "proffered intelligible [certification] arguments" (quotations omitted)); *Anderson Living Tr. v. ConocoPhillips*

*Co., LLC*, No. CIV 12-0039 JB/SCY, --- F.R.D. ----. 2025 WL 950473, at *74 (D.N.M. Mar. 28, 2025).

* * *

For the reasons set forth above, Petitioners D.B.U. and R.M.M. have, by a preponderance of the evidence, satisfied Rule 23(a)'s threshold certification requirements. *See* Fed. R. Civ. P. 23(a). The Court now proceeds to its analysis of Petitioners' class certification motion under Rule 23(b)(2).

### B. Rule 23(b)(2)

Having satisfied Rule 23(a)'s requirements, the Court turns to whether Petitioners have met their Rule 23(b)(2) burden. *See, e.g.,* Fed. R. Civ. P. 23(b). Explained below, they have.

Plaintiffs bring this class action under Rule 23(b)(2), *see* ECF No. 4 at 13, which provides maintenance of a class action where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole," Fed. R. Civ. P. 23(b)(2). *See also Wal-Mart*, 564 U.S. at 360 ("Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class."); *Anderson Living Trust*, 2025 WL 950473, at *29 (collecting cases and explaining background and purpose of Rule 23(b)(2) class actions); *Adamson*, 855 F.3d at 676 (noting Rule 23(b)(2) "contains no requirement of 'predominance'" (footnote omitted)).

Rule 23(b)(2) imposes two requirements. First, that "the defendants' actions or inactions must be based on grounds generally applicable to all class members." *Shook v.*

18

*Bd. of Cnty. Commissioners of Cnty. of El Paso*, 543 F.3d 597, 604 (10th Cir. 2008). And second, "that final injunctive relief be appropriate for the class as a whole." *Id.* (emphasis omitted); *see also Martinez v. Reams*, No. 20-cv-00977-PAB-SKC, 2021 WL 603054, at *2 (D. Colo. Feb. 16, 2021).

Although the parties' briefs do not explicitly frame their Rule 23(b)(2) arguments in these terms, considering Rule 23(b)(2)'s two requirements in turn, *see Shook*, 543 F.3d at 604, the Court concludes Petitioners have satisfied them.

### i.    General Applicability

Petitioners argue that they have satisfied Rule 23(b)(2) because "Respondents have acted on grounds that apply generally to the class by subjecting them all to the same Proclamation . . ." ECF No. 4 at 14. Respondents counter Petitioners cannot secure "common injunctive relief" because "[c]lass members are likely to be differently situated from Petitioners or from each other." ECF No. 46 at 15. The Court agrees with Petitioners.

Respondents' actions—subjecting class members to detainment and removal under the Proclamation—are "grounds generally applicable" to all class members. *Shook*, 543 F.3d at 604. And contrary to Respondents' argument regarding any class members who are "differently situated from Petitioners or from each other," ECF No. 46 at 15, "[t]hat the claims of individual class members *may* differ factually should not preclude certification under Rule 23(b)(2) of a claim seeking the application of a common policy," *Adamson*, 855 F.2d at 676 (emphasis added); § 1775 Class Actions for Injunctive or Declaratory Relief Under Rule 23(b)(2)—In General, 7AA Fed. Prac. & Proc. Civ. § 1775 (3d ed.) ("All the class members need not be aggrieved by or desire to challenge

19

defendant's conduct in order for some of them to seek relief under Rule 23(b)(2)." (footnote omitted)).

At bottom, Petitioners challenge the application of the Proclamation, a "common policy," *see id.*, to which Petitioners and class members are or may be subject, *see* ECF No. 4 at 1–2. This is sufficient to meet their burden under Rule 23(b)(2)'s first requirement. *See Shook*, 543 F.3d at 604; *B.K. by next friend Tinsley v. Snyder*, 922 F.3d 957, 971 (9th Cir. 2019) ("A single, indivisible injunction ordering state officials to abate [their challenged] policies and practices 'would provide relief to each member of the class,' thus satisfying Rule 23(b)(2).") (quoting *Wal-Mart*, 564 U.S. at 360).

### ii. Relief Appropriate to Class

Petitioners contend that Rule 23(b)(2) certification is proper because the proposed class is "sufficiently cohesive," and that the injunctive relief they seek "would benefit them as well as all members of the proposed class in the same fashion," ECF No. 4 at 14. Respondents argue "[r]esolution of Petitioners' proposed contentions might result in injunctive relief for some [class members], but not all of them." ECF No. 46 at 15. The Court agrees with Petitioners.

First, the class is sufficiently "cohesive:" class-wide injunctive relief can satisfy Federal Rule of Civil Procedure 65(d), insofar as any injunction issued by the Court may "state its terms specifically." Fed. R. Civ. P. 65(d); *see also* ECF No. 4 at 14. The Court's prior TRO demonstrates there is no impediment to Petitioners satisfying Rule 65(d), insofar as the Court has already specified temporary injunctive relief with which Respondents, based on representations in their response to Petitioners' preliminary

injunction motion, have complied. *Compare* ECF No. 35 at 34, *with* ECF No. 48 at 6 ("The government recognizes that the Court's TRO . . . mandates a specific notice process in the District of Colorado, which is being implemented in this district."); *Shook*, 543 F.3d at 604. In other words, the Court's temporary injunctive relief was sufficiently specific that Respondents were able to comply with it, and any future injunctive relief would be substantially similar, if not identical, to the relief the Court granted in its TRO order. ECF No. 35.

Second, it is not "necessary to correct" Respondents' "allegedly unlawful conduct" in a manner that is "specifically tailored to each class member." *Id.* (quotations omitted); *see also* ECF No. 4 at 14. The class Petitioners seek to represent would not be "unmanageable," given membership is readily ascertainable and class members' injuries are "sufficiently similar that they can be addressed in a single injunction that need not differentiate between class members." *Shook*, 543 F.3d at 604. Put differently, the permanent injunction Petitioners ultimately seek, *see* ECF No. 1 at 22, regarding the due process and notice to which class members may be entitled, premised on resolution of the legal question as to whether the Proclamation is infirm under constitutional and statutory frameworks, requires no "time-consuming inquiry into individual circumstances" of class members, *Shook*, 543 F.3d at 604. See *also Tinsley*, 922 F.3d at 971–72; *Amchem Products*, 521 U.S. at 614 ("Civil rights cases against parties charged with unlawful, class-based discrimination are prime [Rule 23(b)(2)] examples.").

To be sure, the Court agrees with Respondents that "claims for *individualized* relief . . . do not satisfy" Rule 23(b)(2). *Wal-Mart*, 564 U.S. at 361; ECF No. 46 at 15. But

Respondents confuse the individualized nature of any class member's habeas proceedings that would *follow* any injunctive relief with the class-wide relief as to the notice and due process to which class members would be entitled *prior to* conducting any individual habeas proceedings. *See J.A.V.*, 2025 WL 1256996, at *5. Questions as to the Proclamation's validity, which address its failure to provide adequate notice and whether it is a valid exercise of the Act, are different from questions of whether individual detainees have shown, after receiving proper notice, entitlement to habeas relief. *See, e.g., Adamson*, 855 F.2d at 676 ("That the claims of individual class members may differ factually should not preclude certification under Rule 23(b)(2) of a claim seeking the application of a common policy." (citation omitted)); *Stricklin*, 594 F.3d at 1200 ("Named Plaintiffs assert that [challenged actions] are harming or putting at risk of harm *all* [members] in the class, [so] the imposition of [injunctive relief] would apply to the entire class."). Put simply, Respondents put the cart before the horse. But, given the nature of Petitioners' requested relief, they are wrong to do so.

\* \* \*

Certification of Petitioner D.B.U. and R.M.M.'s proposed class is appropriate. Petitioners have satisfied Rule 23(a) and Rule 23(b)(2)'s requirements by a preponderance of the evidence. The Court is mindful, of course, that certifying Petitioners' proposed class is not dispositive of Petitioners' habeas claims, or any class member's habeas claim. "In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen*, 417 U.S. at 178. After

conducting its "rigorous analysis" of the class certification requirements, the Court answers this question affirmatively. *See Wal-Mart*, 564 U.S. at 351.

## IV.    CONCLUSION

Consistent with the above analysis, Petitioners' Motion for Class Certification, ECF No. 4, is GRANTED. Petitioners' class as proposed in the Motion for Class Certification is certified, specifically:

> All noncitizens in custody in the District of Colorado who were, are, or will be subject to the March 2025 Presidential Proclamation entitled 'Invocation of the Alien Enemies Act Regarding the Invasion of the United States by Tren de Aragua' and/or its implementation.

Petitioners D.B.U. and R.M.M. are named as class representatives. Pursuant to Federal Rule of Civil Procedure 23(g), Lee Gelernt of American Civil Liberties Union Foundation is appointed lead counsel for the certified class, and all ACLU attorneys who have appeared in this matter as counsel of record for Petitioners are appointed co-counsel for the certified class.

DATED this 6th day of May, 2025.

BY THE COURT:

Charlotte N. Sweeney
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:25-cv-01163-CNS

D.B.U. and R.M.M., on behalf of themselves and others similarly situated,

      Petitioners-Plaintiffs,

v.

DONALD J. TRUMP, in his official capacity as President of the United States:
PAMELA BONDI, Attorney General of the United States, in her official capacity;
KRISTI NOEM, Secretary of the U.S. Department of Homeland Security, in her official capacity;
U.S. DEPARTMENT OF HOMELAND SECURITY;
TODD LYONS, Acting Director of U.S. Immigration and Customs Enforcement, in his official capacity;
U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT;
MARCO RUBIO, Secretary of State, in his official capacity;
U.S. STATE DEPARTMENT;
ROBERT GAUDIAN, Director of the Denver Field Office for U.S. Immigration and Customs Enforcement, in his official capacity; and
DAWN CEJA, Warden, Denver Contract Detention Facility, in her official capacity,

      Respondents-Defendants.

---

## ORDER

---

    Petitioners-Plaintiffs are civil immigration detainees who fear imminent transfer from this judicial district and removal without adequate notice. Their fear is premised on the President's use of the Alien Enemies Act (the Act) to remove noncitizens from the United States.

Fearing imminent risk of removal pursuant to President Donald J. Trump's March 14, 2025, Proclamation designating Tren de Aragua (TdA) a "Foreign Terrorist Organization," *see* Invocation of the Alien Enemies Act Regarding the Invasion of the United States by Tren de Aragua, 90 Fed. Reg. 13,033 (Mar. 14, 2025), Petitioners filed their Class Petition for Writ of Habeas Corpus and Class Complaint for Declaratory and Injunctive Relief, ECF No. 1. Petitioners concurrently filed their Emergency Motion for Temporary Restraining Order, ECF No. 2, which the Court granted on April 22, 2025. *See generally D.B.U. v. Trump*, No. 1:25-cv-01163-CNS, --- F. Supp. 3d ----, 2025 WL 1163530 (D. Colo. Apr. 22, 2025). In its TRO order, the Court provisionally certified the class Petitioners seek to represent, and ordered that:

> Petitioners and members of the provisionally certified class shall not be transferred outside the District of Colorado. The Court orders the following regarding the notice Respondents and the government must provide Petitioners and the provisionally certified class of individuals they seek to represent: Respondents shall provide a twenty-one (21) day notice to individuals detained pursuant to the Act and Proclamation. Such notice must state the government intends to remove individuals pursuant to the Act and Proclamation. It must also provide notice of a right to seek judicial review, and inform individuals they may consult an attorney regarding their detainment and the government's intent to remove them. Such notice must be written in a language the individual understands.

*D.B.U.*, 2025 WL 1163530, at *1. The Court also instructed Petitioners to file their preliminary injunction motion by April 25, 2025. *See id.* at *14. On April 29, 2025, the Tenth Circuit denied Respondents' emergency motion for a stay pending appeal of the Court's temporary restraining order on the grounds that Respondents failed to meet their irreparable harm burden. *See D.B.U. v. Trump*, No. 25-1164, 2025 WL 1233583, at *1 (10th Cir. Apr. 29, 2025).

2

Before the Court is Petitioners' Motion for Preliminary Injunction. ECF No. 45. For the following reasons, the Court GRANTS Petitioners' preliminary injunction motion. In granting Petitioners' motion, the Court presumes a reader's familiarity with this case's legal, factual, and procedural background set forth in the Court's TRO order, as well as the Court's May 6, 2025 order granting Petitioners' Motion for Class Certification *See D.B.U.*, 2025 WL 1163530, at *1–4; ECF No. 51.

## I.    LEGAL STANDARD

A preliminary injunction is an "extraordinary remedy." *Free the Nipple-Fort Collins v. City of Fort Collins, Colorado*, 916 F.3d 792, 797 (10th Cir. 2019) (quotation omitted). To prevail on a preliminary injunction motion, movants must show: "(1) they are 'likely to succeed on the merits,' (2) they are 'likely to suffer irreparable harm in the absence of preliminary relief,' (3) 'the balance of equities tips in [their] favor,' and (4) 'an injunction is in the public interest.'" *M.G. through Garcia v. Armijo*, 117 F.4th 1230, 1238 (10th Cir. 2024) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)); *Beltronics USA, Inc. v. Midwest Inventory Distribution, LLC*, 562 F.3d 1067, 1070 (10th Cir. 2009). The final two factors "merge" when the government "is the opposing party." *Denver Homeless Out Loud v. Denver, Colorado*, 32 F.4th 1259, 1278 (10th Cir. 2022) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)). "An injunction can issue only if each factor is established." *Denver Homeless*, 32 F.4th at 1278 (citing *Winter*, 555 U.S. at 23–24).

## II.    ANALYSIS

The parties' preliminary injunction arguments echo loudly those made in support of—and resistance to—Petitioners' temporary restraining order request. *See also Nellson*

3

*v. Barnhart*, 454 F. Supp. 3d 1087, 1091 (D. Colo. 2020. The Court addresses them and,
when instructive, refers to analyses in its April 22, 2025, TRO order.

### A. Threshold Issues

Respondents advance several threshold arguments—e.g., that Petitioners lack
standing and the Court has no jurisdiction to review the Proclamation. *See, e.g.,* ECF No.
48 at 7. The Court addresses—and rejects—these arguments in turn.

#### i.    Standing

Respondents argue, as they did in opposing Petitioners' TRO motion, that
Petitioners lack Article III standing. *See* ECF No. 48 at 8; *id.* at 16. According to
Respondents, Petitioners are not under an "actual and imminent" threat because "they
are [not] subject [to] the President's Proclamation." *Id.*; *cf.* ECF No. 45 at 9. The Court
disagrees. For substantially the same reasons the Court rejected Respondents' standing
arguments in its TRO order, it does so again. *See D.B.U.*, 2025 WL 1163530, at *6. At
bottom, Petitioners have met their Article III standing burden because "there is a
'substantial risk that the harm' of being subject to the Proclamation will arise—despite
[Petitioners'] current designation as individuals who do not fall under it." *Id.* (quoting
*Susan B. Anthony v. Driehaus*, 573 U.S. 149, 158 (2014)); *TransUnion LLC v. Ramirez*,
594 U.S. 413, 425 (2021) ("[A] person exposed to a risk of future harm may pursue
forward-looking, injunctive relief to prevent the harm from occurring, at least so long as
the risk of harm is sufficiently imminent and substantial." (citation omitted)); ECF No. 45
at 9–10; ECF No. 49 at 2.

To the extent Respondents mount a new standing argument, it is that Petitioners cannot claim injury by Respondents' notice policy because they "have already filed a habeas claim and any notice policy therefore cannot cause them harm." ECF No. 48 at 8. Of course, Respondents have a point—Petitioners have obviously filed this habeas challenge in federal court. *See generally* ECF No. 1. But as Petitioners observe, their habeas challenge is not merely about the notice to which they are entitled as a due process matter. *See* ECF No. 49 at 3. They also challenge "threshold issues like the Proclamation's failure to satisfy the [Act's] statutory predicates." *Id.* This challenge presents a live case and controversy under Article III. *See Murthy v. Missouri*, 603 U.S. 43, 56 (2024) ("Article III of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'"); *id.* ("Federal courts can only review statutes and executive actions when necessary 'to redress or *prevent actual or imminently* threatened injury to persons caused by ... *official violation of law*.'") (quoting *Summers v. Earth Island Institute*, 555 U.S. 488, 492 (2009)) (emphases added); *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) ("It must be alleged that the plaintiff has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged statute or official conduct." (quotations omitted)); *Blum v. Yaretsky*, 457 U.S. 991, 1000 (1982) ("Of course, [o]ne does not have to await *the consummation of threatened injury* to obtain preventive relief." (quotations omitted) (emphasis added)). This is particularly true where, as here, Petitioners seek *injunctive* relief. *See Green-Cooper v. Brinker Int'l, Inc.*, 73 F.4th 883, 889 (11th Cir. 2023) ("For purposes of the concrete injury analysis under Article III, we

have recognized three kinds of harm [including] a 'material risk of future harm' when a plaintiff is seeking injunctive relief." (citation omitted)).

Thus, Petitioners have standing to mount their habeas claims, both for themselves and, as explained further in the Court's class certification order, on a class basis. *See Rector v. City & Cnty. of Denver*, 348 F.3d 935, 949–50 (10th Cir. 2003).

### ii.    Presidential Power & Political Questions

Respondents' broad argument the Court lacks jurisdiction to "review the President's Proclamation" rests on two premises: the President's authority "under [the Act] is not a proper subject of judicial scrutiny," ECF No. 48 at 9, and the "political questions doctrine" likewise bars judicial review of the Proclamation, *id.* at 11. These are flawed premises from which Respondents' unpersuasive argument proceeds. The Court considers them in turn.

### a.  Presidential Power

According to Respondents, federal courts cannot issue "injunction[s] purporting to supervise the President's performance of his duties," including his exercise of power and authority under the Act. ECF No. 48 at 9; *see also id.* at 17 ("[T]he [Act] grants the President virtually *unreviewable* discretion . . . .") (emphasis added). But this argument runs afoul of the separation-of-power principles Respondents purport to value. Granting Petitioners injunctive relief does not amount to "enjoin[ing] the President's exercise authority under Article II." *Id.* Judicial review of the Proclamation and Act is a proper exercise of federal courts' authority. *See, e.g., Marbury v. Madison*, 5 U.S. 137, 177 (1803) ("It is emphatically the province and duty of the judicial department to say what the

6

law is."); *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 385 (2024) ("'[I]nterpret[ing] the laws, in the last resort,' [is] a 'solemn duty" of the Judiciary.") (quoting *United States v. Dickson*, 15 Pet. 141, 162 (1841)). Federal courts and judicial review are a feature—not a defect—of this Nation's constitutional structure. *See* U.S. Const. art. III, § 1; *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 483 (2010) ("Our Constitution divided the powers of the new Federal Government into three defined categories, Legislative, Executive, and Judicial." (quotations omitted)). And simply because federal courts issue rulings unfavorable to the government is no basis, standing alone, to dispute their constitutional authority or power. *See Immigr. & Naturalization Serv. v. Chadha*, 462 U.S. 919, 951 (1983) ("The hydraulic pressure inherent within each of the separate Branches to exceed the outer limits of its power, even to accomplish desirable objectives, must be resisted."). Especially in a case such as this that hinges on statutory interpretation of the Act—a power of judicial authority the United States Supreme Court has both endorsed and exercised itself. *See Trump v. J. G. G.*, 604 U.S. ----, 145 S. Ct. 1003, 1006 (2025) ("[A]n individual subject to detention and removal under that statute is entitled to judicial review as to questions of interpretation and constitutionality of the Act." (quotations omitted)).

Respondents argue that the Court lacks the ability to "scrutinize" the President's "authority and discretion" under the Act. ECF No. 48 at 9. In their efforts to seek distance from this centuries-old legal authority, Respondents misinterpret it. *See also* ECF No. 45 at 11. For example, in *Ludecke v. Watkins* the Supreme Court "construed" the Act in its analysis of the President's assertion of "power under the Act." 335 U.S. 160, 170 (1948);

*see also id.* ("This brings us to the final question. Is the statute valid as we have construed it?"). Other courts have done the same. *See, e.g., Citizens Protective League v. Clark*, 155 F.2d 290, 294 (D.C. Cir. 1946) ("The one question, whether the individual involved is or is not an alien enemy, is admitted by the Attorney General to be open to *judicial determination*.") (emphasis added); *J.A.V.*, 2025 WL 1257450, at *8 ("In those decisions [including *Ludecke*], however, the Supreme Court also identified issues related to the AEA that *are* subject to adjudication."); *U.S. ex rel. Kessler v. Watkins*, 163 F.3d 140, 143 (2d Cir. 1947). At the expense of repeating itself, the Court rejected this argument in its TRO order and does so again. *D.B.U.*, 2025 WL 1163530, at *7. ("Decades old decisional law dooms Respondents' argument—to say nothing of the Supreme Court's per curiam opinion [in *J. G. G.*] issued earlier this month."). At bottom, efforts to recharacterize what Petitioners seek—judicial review of the Proclamation and Act—as somehow an unconstitutional infringement on Presidential authority—telling the President what to do— are unpersuasive. *See J.A.V.*, 2025 WL 1257450, at *8; *J.G.G. v. Trump*, No. 25-5067, 2025 WL 914682, at *21 (D.C. Cir. Mar. 26, 2025) ("A TRO directing military deployments or maneuvers certainly would raise profound separation of powers questions warranting the most careful consideration and remediation. But nothing remotely like that happened here.") (Millett, J., concurring).

### b. Political Questions

Respondents next assert that "whether the [Act's] preconditions are satisfied" is an unreviewable political question. ECF No. 48 at 10. Nonsense. Courts—including this one—have rejected this meritless argument, and the Court declines to indulge it further.

*See, e.g., J.G.G. v. Trump*, No. CV 25-766 (JEB), --- F. Supp. 3d ----, 2025 WL 890401, at *9 (D.D.C. Mar. 24, 2025) ("To the degree that a claim requires the court to interpret a statutory provision or decide a law's constitutionality, the political-question doctrine is not implicated: deciding such questions 'is a familiar judicial exercise.'") (citing *Zivotofsky ex rel. Zivotofsky v. Clinton*, 566 U.S. 189, 196 (2012)); *J.A.V.*, 2025 WL 1257450, at *10 ("It is true that the Constitution ascribes authority and responsibility for foreign policy and national security to the Legislative and Executive branches . . . . But construing the language of the [Act] does not require courts to adjudicate the wisdom of the President's foreign policy and national security decisions."); *D.B.U.*, 2025 WL 1163530, at *7*; Loper Bright*, 603 U.S. 369 at 401 ("The judiciary is the final authority on issues of statutory construction." (quotations and alterations omitted)). And Respondents' recitation of *descriptive* legal propositions does not bear the weight of their meritless argument. *Cf. Baker v. Carr*, 369 U.S. 186, 217 (1962); *J.A.V.*, 2025 WL 1257450, at *10; ECF No. 45 at 13–14.

* * *

Respondents' arguments are threadbare costumes for their core contention: "As for whether the Act's preconditions are satisfied, that is the President's call alone; the federal courts do not have a role to play." ECF No. 48 at 12. This sentence staggers. It is wrong as a matter of law and attempts to read an entire provision out of the Constitution. *See* U.S. Const. art. III, § 1. The Court declines Respondents' invitation to engage in such a revisionist exercise. *See Comm. for Nuclear Resp., Inc. v. Seaborg*, 463 F.2d 788, 793 (D.C. Cir. 1971) ("An essential ingredient of our rule of law is the authority of the courts

to determine whether an executive official or agency has complied with the Constitution and with the mandates of Congress which define and limit the authority of the executive. Any claim to executive absolutism cannot override the duty of the court to assure that an official has not exceeded his charter or flouted the legislative will."); *Morrison v. Olson*, 487 U.S. 654, 699 (1988) ("The allocation of power among Congress, the President, and the courts [is] in such fashion as to preserve the equilibrium the Constitution sought to establish—so that 'a gradual concentration of the several powers in the same department' . . . can effectively be resisted.") (Scalia, J., dissenting) (quoting Federalist No. 51 at 321 (J. Madison)); *A.A.R.P.*, 145 S. Ct. 1034 ("Both the Executive and the Judiciary have *an obligation to follow the law*.") (Alito, J., dissenting) (emphasis added).

For this reason and those set forth above, Respondents err in arguing the Court lacks jurisdiction over Petitioners' habeas claims.

### iii.    Remaining Jurisdictional Arguments

Respondents advance a few more jurisdictional arguments. *See, e.g.,* ECF No. 12. The Court addresses them briefly.

### a.  Convention Against Torture

First, according to Respondents, the Court is "without jurisdiction to consider" Petitioners' Convention Against Torture arguments. Petitioners disagree. ECF No. 49 at 4, 27. *J.A.V.* considered a virtually identical argument and concluded "it does not possess jurisdiction to consider [p]etitioners' challenges to the Proclamation based on the Convention." 2025 WL 1257450, at *19. The Court finds *J.A.V.*'s thorough analysis of this issue persuasive, and agrees with its conclusion that the Court lacks jurisdiction to

consider Petitioners' challenges to the Proclamation based on the Convention Against Torture. *See id.* (collecting and discussing cases); *Kapoor v. DeMarco*, 132 F.4th 595, 608 (2d Cir. 2025) ("By its explicit reference to both 28 U.S.C. § 2241 and 'any other habeas corpus provision,' Section 1252(a)(4) plainly bars habeas review of [Convention] claims." (citation omitted)).

### b. Enjoining Petitioners' Transfers

Second, Respondents argue the Court lacks jurisdiction to "enjoin the transfer of Petitioners or putative class members outside of" the District of Colorado. ECF No. 48 at 14. That is not so. Respondents cite legal authority regarding executive power and judicial limitations in the distinguishable context of the Immigration and Nationality Act and Title 8. *See, e.g., id.* However, Petitioners observe they are not "challeng[ing] discretionary actions that the [these] provisions are meant to shield from review." ECF No. 49 at 10. Indeed, as the Court's temporary restraining order made clear, provisions in the Immigration and Nationality Act and Title 8 do not "reach so far as to prohibit judicial review 'as to questions of interpretation and constitutionality' of the Act simply because any case, putative class or class member, or petitioner may implicate or also be involved in Title 8 immigration proceedings." *D.B.U.*, 2025 WL 1163530, at *8 (quoting *J. G. G.*, 2025 WL 1024097, at *1. "Petitioners, through habeas, challenge removal proceedings under the Proclamation and Act, implicating the place of their detention only to the extent necessary to adjudicate their habeas claims." *Id.* (citations omitted); *id.* at *13. And if there was any doubt the Court may enjoin inter-district transfers of individuals detained pursuant to the Act and Proclamation, the Supreme Court's decision in *A.A.R.P* dispels

11

it. *A.A.R.P. v. Trump*, 145 S. Ct. 1034 (2025). *See also J.A.V.*, 2025 WL 125740, at \*20 (issuing permanent injunction barring respondents from "detaining, *transferring*, or removing [petitioners], and members of the certified class" (emphasis added)); *see also J.A.V.*, 2025 WL 1257450, at \*18 (concluding at summary judgment stage that "Respondents do not possess the lawful authority under the [Act], and based on the Proclamation, to detain Venezuelan aliens, *transfer them within the United States*, or remove them from the country") (emphasis added).

The Court pauses, however, to state the obvious: Nothing in the Court's TRO order, or in the preliminary injunction it issues here, prohibits Respondents from deporting or removing individuals under the immigration authority they cite. *See J.G.G. v. Trump*, 2025 WL 914682, at \*30 ("The Executive remains free to take TdA members off the streets and keep them in detention. The Executive can also deport alleged members of TdA under the INA . . .") (Millett, J., concurring); *J.G.G. v. Trump*, 2025 WL 890401, at \*1 ("[N]either Order prevented the Government from deporting anyone—including Plaintiffs—through authorities *other than* the Proclamation, such as the INA."); *D.B.U.*, 2025 WL 1163530, at \*13 ("Respondents are not prohibited, should a TRO issue, from proceeding to deport and remove individuals under the INA *at all*."). Rather, the Court has jurisdiction to enjoin Respondents from transferring Petitioners and class members out of this judicial district where those transfers are based on the Act and Proclamation. *See, e.g., A.A.R.P.*, 145 S. Ct. 1034. To again state the obvious: The Act and Proclamation are distinct from the Immigration and Nationality Act and Title 8. Respondents are wrong to conflate them.

### c.  Habeas Jurisdiction

Finally, Respondents argue the Court cannot exercise jurisdiction over Petitioners' claims under 28 U.S.C. § 2241. ECF No. 48 at 16. All that's old is new again. The Court rejected this argument in its TRO order and does so again for the same reasons. *See D.B.U.*, 2025 WL 1163530, at *5–6.

\* \* \*

Respondent's remaining jurisdictional arguments—that the Court lacks authority for judicial review under Title 8, cannot enjoin transfers to other judicial districts, and lacks § 2241 jurisdiction—may, as the Court's analysis above indicates, sound familiar. They are. So too, for this reason, will the Court's response to them. *See, e.g., D.B.U.*, 2025 WL 1163530, at *9. As discussed above, consistent with the Court's analysis in its TRO order, these arguments fail, and do not stop the Court from proceeding, as it will now, in its merits analysis of Petitioners' preliminary injunction motion.

### B.  Preliminary Injunction

Having addressed these arguments, the Court now considers whether Petitioners have met their preliminary injunction burden. *See M.G.*, 117 F.4th at 1238. Explained below, they have.

### i.    Likelihood of Success on the Merits

To hear Respondents tell it, Petitioners cannot meet their "likelihood of success" burden because "[t]he Proclamation comports with the [Act's] statutory requirements." ECF No. 48 at 17. *See also* 50 U.S.C. § 21. Petitioners disagree, contending the Proclamation does not meet the Act's preconditions. *See, e.g.,* ECF No. 45 at 9, 17. The

13

Court parses these requirements—which Respondents acknowledge are *requirements*—
in turn. *See* ECF No. 48 at 17.

> a. *"Invasion," "Predatory Incursion," and*
> *"Foreign Nation or Government"*

**Invasion.** According to Respondents, the President determined TdA is
"perpetuating an invasion *or* predatory incursion" in the United States. ECF No. 48 at 17.
In making this argument, Respondents read the word "invasion" as broadly including a
"hostile entrance," or "hostile encroachment," *id.* This argument and the authority
marshalled in support of it are unpersuasive.

The Court previously considered the "definitional and historic registers" against
which "invasion" and "predatory incursion" may be interpreted under the Act. *D.B.U.*, 2025
WL 1163530, at *9. There is no reason to disturb its conclusion that the word "invasion"
as used in the Act "contemplate[s] military action." *Id.* at *10; *cf.* ECF No. 48 at 17. "The
term 'invasion' was a legal term of art with a well-defined meaning at the Founding."
*J.G.G.*, 2025 WL 914682, at *8   (Henderson, J., concurring); *see also id*. (defining
"invasion as a "'[h]ostile entrance upon the right or possessions of another; hostile
encroachment,' such as when 'William the Conqueror invaded England'") (quoting
Samuel Johnson, Invasion, sense 1, A DICTIONARY OF THE ENGLISH LANGUAGE
(4th ed. 1773)); (reciting second dictionary defining "invasion as a "'hostile entrance into
the possession of another; particularly the entrance of a *hostile army* into a country for
the purpose of conquest or plunder, or the attack of a military force'") (quoting Noah
Webster, Invasion, sense 1, AMERICAN DICTIONARY OF THE ENGLISH LANGUAGE
(1828)) (emphasis added).

At least one other court has subsequently confronted the question Respondents pose—what does "invasion" mean?—and rejected virtually identical arguments now advanced by Respondents in their instant opposition. *See J.A.V.*, 2025 WL 1257450, at *15 ("[N]umerous sources contemporaneous to the enactment of the [Act] [are sources] in which 'invasion' and 'predatory incursion' expressly reference or imply military action."). The Court finds *J.A.V.*'s analysis persuasive and adopts it, bolstering its prior conclusion in the TRO order that "invasion" demands military action. *See* D.B.U., 2025 WL 1163530, at *10. And as to the *same definition* Respondents cite here—that "invasion" merely means "hostile entrance"—*J.A.V.* did not equivocate: "Respondents identify no other historical records supporting their proposed meaning of 'invasion,' and they offer no sources from the nation's founding era as to the ordinary meaning of 'predatory incursion.'" *Id.* The Court finds Respondents' briefing here likewise lacking.

Accordingly, the Court agrees with Petitioners—consistent with Founding-era definitions and historical sources, including those cited in Petitioners' preliminary injunction motion—that the word "invasion" as used in the Act "contemplate[s] military action." *D.B.U.*, 2025 WL 1163530, at *10 (citations omitted); *J.A.V.*, 2025 WL 1257450, at *16 ("The historical records that the parties present, supplemented by the additional records that the Court reviewed, demonstrate that at the time of the [Act's] enactment, the plain, ordinary meaning of 'invasion' was an entry into the nation's territory by a *military force* or an organized, armed force, with the purpose of conquering or obtaining control over territory.") (emphasis added); ECF No. 45 at 18–21.

*Predatory Incursion.* Respondents argue the phrase "predatory incursion" as used in the Act "encompasses (1) an entry into the United States (2) for purposes contrary to the interests or laws of the United States." ECF No. 48 at 18. Would that it was so—or that cases decided centuries after the Act was enacted support Respondents' homespun definition of "predatory invasion." *See, e.g., id.* (citing *Amaya v. Stanolind Oil & Gas Co.,* 62 F. Supp. 181, 189–90 (S.D. Tex. 1945)). Once again, Respondents distort language and the relevant historical backdrop against which the Court must interpret it. *See, e.g., Wisconsin Cent. Ltd v. United States*, 585 U.S. 274, 277 (2018) ("[O]ur job is to interpret the words consistent with their ordinary meaning . . . at the time Congress enacted the statute." (quotations omitted)); *Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644, 784 (2020) ("The ordinary meaning that counts is the ordinary public meaning *at the time of enactment.*") (Kavanaugh, J., dissenting) (emphasis added). And considering the controlling historical definitions and sources, *see id.*, the Court agrees with Petitioners and other courts—consistent with its TRO order—that "predatory invasion" demands more. *See, e.g., D.B.U.*, 2025 WL 1163530, at *10; *Ludecke*, 335 U.S. at 170 n.13, 68 S.Ct. 1429 ("[T]he life of [the] statute is defined by *the existence of a war.*") (emphasis added); *J.A.V.*, 2025 WL 1257450, at *16 ("[T]he common usage of "predatory incursion" . . . referenced a military force or an organized, armed force entering a territory to destroy property, plunder, and harm individuals, with a subsequent retreat from that territory. Although other uses exist for these terms, those rare uses do not represent the *ordinary meaning of those terms.*") (emphasis added); *J.G.G.*, 2025 WL 914682, at *10 ("Like its statutory counterparts, predatory incursion referred to a form of hostilities against the

16

United States by another nation-state, a form of attack short of war.") (Henderson, J., concurring); ECF No. 45 at 21.

*Foreign Nation or Government.* Respondents argue TdA qualifies as a "foreign nation or government" under the Act because "TdA's infiltration of key elements of the Venezuelan state make it indistinguishable from Venezuela," and TdA operates as a "governing authority in the areas where it operates." ECF No. 48 at 19–20. In doing so, Respondents acknowledge TdA is a "nonstate actor[,]" and that TdA "itself is [not] itself a 'nation.'" *Id.* at 21.

This acknowledgment starts and stops the Court's discussion of what "foreign nation" or "government" mean under the Act. The Court need not plunge into the historical record to reject Respondents' argument, *cf.* ECF No. 45 at 22, or further define "foreign nation" or "government" in order to resolve the issues presented by Petitioners' preliminary injunction motion. Particularly where "[t]he Proclamation does not find TdA *itself* is a foreign nation, country, or government." *D.B.U.*, 2025 WL 1163530, at *11; *J.A.V.*, 2025 WL 1257450, at *17 ("[T]he Proclamation declares that the country of Venezuela, through Maduro, directs and controls TdA's activities in the United States."); *id.* ("[T]he Court finds that the Proclamation places the government of Venezuela as the controlling entity over TdA's activities in the United States."). Accordingly, the Court agrees with *J.A.V.* that "[a]lthough the Proclamation focuses on TdA's activities in the United States, it places *control* of those activities in Maduro, acting in his claimed role of President of Venezuela." 2025 WL 1257450, at *17 (emphasis added); *see also D.B.U.*,

2025 WL 1163530 ("[T]he Proclamation fails to adequately find or assert TdA is 'a foreign nation or government.'") (citing § 21); ECF No. 45 at 23.

The Court makes one observation. Of course the President is "entitled to examine the available evidence" and make a final determination as to whether an organization or entity constitutes a "foreign nation or government" that has invaded or taken a predatory incursion against the United States. ECF No. 48 at 21. In this vein, the Court agrees with *J.A.V.* that "[o]nce a court defines the parameters of what conduct constitutes an 'invasion' or 'predatory incursion' for purposes of the [Act], the court leaves to the Executive Branch the determination of whether such conduct has been perpetrated, attempted, or threatened." 2025 WL 1257450, at *10. But this does not immunize Respondents—or the Proclamation—from judicial scrutiny. "[A] Presidential declaration invoking the [Act] must include sufficient factual statements or refer to other pronouncements that enable a court to determine whether the alleged conduct satisfies the conditions that support the invocation of the statute." *Id.* at *11. And—consistent with legal authority discussed in the Court's earlier analysis of presidential power and political questions—the Court must determine "whether the factual statements in the Proclamation, taken as true, describe an 'invasion' or 'predatory incursion' for purposes of the [Act]." *J.A.V.*, 2025 WL 1257450, at *18.

Having considered historical definitions of the Act's language and attendant historical records, the Court determines that Petitioners are likely to succeed on the merits of their claim that the President's invocation of the Act "through the Proclamation exceeds the scope of the statute" and is therefore unlawful. *Id.*; *see also D.B.U.*, 2025 WL

1163530, at *11 ("[E]fforts to cramp the Proclamation's findings into [the Act's] historical meaning fail."); *J.G.G.*, 2025 WL 914682, at *24 ("But once those [Executive] decisions are made, determining whether the political answer falls within the meaning of a statutory term is the job of the Judicial Branch.") (Millett, J., concurring). Thus, Petitioners have met their burden under the "likelihood of success" factor based on their argument that the Act does not sustain the Proclamation.

### b.  Summary Notice and Removal

Respondents argue the Act's notice procedures comply with due process, and that for this independent reason Petitioners are unlikely to succeed on the merits of their habeas claims. *See* ECF No. 48 at 22; *cf.* ECF No. 45 at 15. The Court disagrees.

Respondents rally various legal authorities, citing both the Act and Immigration and Nationality Act, to arrive at their fundamental conclusion: "[I]f 24 hours suffices to satisfy due process for someone who may resided in the United States for two years, then surely it is sufficient for those who have been designated enemies of the nation by the Commander in Chief." ECF No. 48 at 24. This argument deflects. The relevant due process inquiry trains on whether, in this factual context, notice to detainees under the Act is provided "in such a manner as will allow them to actually seek habeas relief in the proper venue before [their] removal occurs." *J. G. G.*, 145 S. Ct. at 1006. Exercise of executive discretion as to whether—or what—process is required runs headlong into *J. G. G.* and bedrock due process principles. *See, e.g., Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 ("An elementary and fundamental requirement of due process . . . is notice reasonably calculated, under all the circumstances, to apprise interested

parties of the pendency of the action and afford them an opportunity to present their objections." (citations omitted)); *Boumediene v. Bush*, 553 U.S. 723, 780 (2008) ("[T]he common-law habeas court's role was most extensive in cases of pretrial and noncriminal detention, where there had been little or no previous judicial review of the cause for detention."); *D.B.U.*, 2025 WL 1163530, at *12 ("[W]hen 'notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it.'") (quoting *Mullane*, 339 U.S. at 315). Accordingly, Respondents fail to persuade their proposed notice procedures under the Act are proper. *Compare* ECF No. 48 at 22, *with* ECF No. 45 at 15.

Despite this, Respondents make a well-taken point: Petitioners D.B.U. and R.M.M. have filed this habeas action, and thus any notice policy "cannot cause them harm." ECF No. 45 at 8; *see also id.* at 25. But although Petitioners have filed this habeas action, as explained in the Court's standing analysis they remain subject to the possibility of being deported under the Act, rather than Title 8 immigration proceedings. This is not the straightforward case where Petitioners are categorically foreclosed from ever receiving deficient notice as to their possible removal under the Act and Proclamation— Respondents admitted on April 21, 2025, during oral argument that Petitioners could still be deported under the Act and Proclamation. *See also* ECF No. 45 at 10. Moreover, class members still face the possibility of deportation under the Act and Proclamation, or some class members have at least been designated as TdA members and informed they are removable—and will be removed—under the Act and Proclamation. *See J.A.V.*, 2025 WL

20

1257450, at *12 (observing that while named petitioners "possess[ed] no actual injury from any deficiencies in the notice procedures" that "[t]he same cannot be said for class members").

Now at the preliminary injunction, rather than the temporary restraining order, stage of litigation, the Court must balance the notice Petitioners and class members are entitled to as a matter of due process against Petitioners' likelihood of success on their habeas claims. Put differently, where—as here—there is a likelihood that application of the Act to class members through the Proclamation is unlawful. For this reason, there is little need to provide notice under it. Notice is hardly necessary when the deportation or removal proceeding about which it notifies a class member is unlawful. *See J.A.V.*, 2025 WL 1257450, at *18 (concluding at summary judgment phase that "Respondents do not possess the lawful authority under the [Act], and based on the Proclamation, to detain Venezuelan aliens, transfer them within the United States, or remove them from the country").

\* \* \*

As explained above, because the Proclamation relies on the Act, and the Proclamation exceeds the scope of the Act, Petitioners are likely to succeed on the merits of their claims. *D.B.U.*, 2025 WL 1163530, at *9 ("[T]he Act cannot sustain the Proclamation." (citation omitted)). Given this, there is no need for Respondents to provide notice of class members' deportations under the Proclamation *at all*, because Respondents are enjoined from deporting anyone under the Proclamation and the Act. Accordingly, the Court lifts its April 22, 2025, order that Respondents provide Petitioners

21

and class members of removal proceedings under the Act, because Respondents—at this stage—cannot deport or remove any class member under the Act. *See, e.g., Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1030 (9th Cir. 1985). For this reason, the Court declines Petitioners' invitation to expand its previously ordered notice requirement. *See* ECF No. 45 at 16; 35.

ii.    *Irreparable Harm*

Respondent's essential "irreparable harm" argument is that Petitioners face no irreparable harm because they are currently in removal proceedings under Title 8, not the Act and Proclamation. ECF No. 48 at 28. However, as explained in the Court's TRO order, they remain at a "significant risk" of summary removal under the Proclamation. *D.B.U.*, 2025 WL 1163530, at *12; *see id.* ("Title 8 proceedings do not *eliminate* the risk of irreparable harm that Petitioners would or could be, at any moment, set for deportation and removal under the Act and Proclamation."). And some class members—at a minimum—are certainly at risk of removal under the Act, rather than Title 8.

Further, Petitioners have now adduced evidence demonstrating the harm they and class members face should they be deported under the Proclamation. *See, e.g.,* ECF No. 45 at 30; ECF No. 45-5 at 6, 10; ECF No. 45-6. For example, that detention conditions in El Salvador's Terrorism Confinement Center (CECOT), create a tremendous risk of extreme physical harm. This evidence is sufficient to meet Petitioners' irreparable harm burden, and Respondents' scant briefing on the issue—limited to Petitioners' *current* status as engaged in Title 8 removal proceedings—fail to persuade otherwise. *See, e.g.*, *J.G.G.*, 2025 WL 890401, at *16 ("Needless to say, the risk of torture, beatings, and even

22

death clearly and unequivocally supports a finding of irreparable harm." (citations omitted)); *J. G. G.*, Trump v. J. G. G., 145 S. Ct. 1003, 1010–11 (Sotomayor, J., dissenting). Thus, Petitioners have met their "irreparable harm" preliminary injunction burden. *See M.G.*, 117 F.4th at 1238.

### iii. *Balanced Equities and Public Interest*

Respondents' "equities and public interest" arguments are easily summarized: Granting an injunction would "irreparably harm" the President's national security and foreign policy interests, resulting in the government's inability to "negotiate on critical foreign affairs and national security matters in the future." ECF No. 48 at 28–29. On the other hand, Petitioners argue the public has a strong interest in preventing wrongful removals—particularly where those removals, as here, expose Petitioners and class members to harmful conditions—and any contrary assertion of harm is undercut by Respondents' ability to prosecute and remove noncitizens under Title 8. *See* ECF No. 45 at 32.

The Court agrees with Petitioners that these merged factors favor them and the class. The Court addressed virtually identical arguments in its TRO order, and Respondents have not persuaded the Court's analysis in its TRO order should not apply now, when the parties advance substantially similar arguments. *See, e.g., D.B.U.*, 2025 WL 1163530, at *13 ("Ensuring compliance with a pre-existing requirement imposed by the Supreme Court and Constitution, without limiting any powers under an entirely different statutory regime that permits deportations and removals, does not rise to a level of 'harm' that outbalances the harm Petitioners face absent the issuance of a TRO in this

case at this stage." (citations omitted)). This is acutely true at this stage of litigation, where Petitioners have adduced evidence demonstrating the harms they face should they be deported under the Proclamation, *see, e.g.,* ECF No. 45-6, and where Petitioners have met their burden of showing a likelihood of success in showing the Proclamation, and proceedings under it, exceeds the scope of the Act.

* * *

After considering all preliminary injunction factors and the parties' arguments attendant to them, Petitioners have met their burden of showing they are entitled to preliminary injunctive relief. *See Denver Homeless*, 32 F.4th at 1278 ("An injunction can issue only if each factor is established." (citation omitted)). Fundamentally, the Court concludes R.M.M. and R.B.U. face a sufficient risk of wrongful and harmful deportation under the Act and Proclamation, and that other class members certainly do as well. *See also J.A.V.*, 2025 WL 1257450, at *19.

### III.    CONCLUSION

Consistent with the above analysis, and the Court's authority under Federal Rule of Civil Procedure 65, Petitioners' Motion for Preliminary Injunction is GRANTED. ECF No. 45. Respondents are enjoined from detaining, transferring, or removing Petitioners and members of the certified class under the Act based on the Proclamation from the District of Colorado. Petitioners are not ordered at this time to issue a security or bond, as determined by the Court in the exercise of its discretion. The terms of this preliminary injunction do not apply to the President.

DATED this 6th day of May 2025.

BY THE COURT:

Charlotte N. Sweeney
United States District Judge

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 25-cv-01163-CNS

D.B.U., and
R.M.M., on behalf of themselves and others similarly situated,

      Petitioners-Plaintiffs,

v.

DONALD J. TRUMP, in his official capacity as President of the United States,
PAMELA BONDI, in her official capacity as Attorney General of the United States
KRISTI NOEM, in her official capacity as Secretary of the U.S. Department of Homeland
Security,
U.S. DEPARTMENT OF HOMELAND SECURITY,
TODD LYONS, in his official capacity as Acting Director of U.S. Immigration and
Customs Enforcement,
U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT,
MARCO RUBIO, in his official capacity as Secretary of State,
U.S. STATE DEPARTMENT,
ROBERT GUADIAN, in his official capacity as Director of the Denver Field Office for
U.S. Immigration and Customs Enforcement, and
DAWN CEJA, in her official capacity as Warden, Denver Contract Detention Facility,

      Respondents-Defendants.

---

## NOTICE OF APPEAL

---

      The Respondents identified above appeal to the United States Court of Appeals

for the Tenth Circuit from the District Court's Order at ECF No. 52, and its related Order

at ECF No. 51.

Dated: July 7, 2025

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

Drew C. Ensign
Deputy Assistant Attorney General
Civil Division


s/ Michael Velchik
***Michael Velchik***
Senior Counsel to the Assistant Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530
Telephone: (202) 860-3833
Email: michael.velchik@usdoj.gov

*Counsel for Respondents*

# CERTIFICATE OF SERVICE

I hereby certify that on July 7, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, and that in accordance with Fed. R. Civ. P. 5, all counsel of record shall be served electronically through such filing.

*s/ Michael Velchik*
Michael Velchik